**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Gordon WINSETT,
Defendant-Appellant.**

No. 74–3235.

United States Court of Appeals,
Ninth Circuit.

May 27, 1975.

Arthur E. Lester, Riverside, Cal., for defendant-appellant.

Donald H. Heller, Asst. U. S. Atty., Sacramento, Cal., for plaintiff-appellee.

OPINION

Before CHAMBERS and CHOY, Circuit Judges, and EAST,* District Judge.

* Honorable William G. East, United States District Judge, District of Oregon, sitting by designation.

CHOY, Circuit Judge:

Winsett appeals from the district court's revocation of his probation. We affirm.

*Facts*

On August 14, 1973, Winsett received a suspended three year prison sentence and was placed on probation for four years for conspiring to import marijuana without paying the special tax, in violation of 26 U.S.C. § 7237(a). A condition of probation was that appellant not leave the judicial district (the Eastern District of California) without permission of his probation officer.

Approximately four months after sentencing, United States Border Patrol agents, unaware that appellant was a probationer, stopped him at a checkpoint in the Southern District of California, just south of Temecula. After discovering over 100 pounds of marijuana in his car, the agents arrested appellant and seized the evidence. He was charged in state court with unlawful possession of the controlled substance, but on June 12, 1974, the state court ruled that the marijuana was inadmissible on the authority of Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) and United States v. Bowen, 500 F.2d 960 (9th Cir.) (en banc) *aff'd,* —— U.S. ——, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975), and dismissed the information against him.

Subsequently the federal probation office in Sacramento filed a petition seeking revocation of Winsett's probation for traveling to Temecula without permission. At a hearing held on August 6, 1974, to determine whether appellant's probation should be revoked, the Government introduced testimony of a border patrol agent that he had seen Winsett in Temecula on December 21, 1973. Appellant objected to the testimony and moved to suppress it on the ground that it was the fruit of an illegal search and arrest.

On August 27, 1974, the court ruled that the evidence of appellant's presence in Temecula was obtained unlawfully but it denied the motion to suppress on the ground that the exclusionary rule does not apply to probation revocation hearings. Relying on the undisputed evidence that Winsett was seen outside the judicial district, the court found him in violation of an express condition of probation and ordered that probation be revoked.

### Extension of the Exclusionary Rule

The important issue raised by this appeal—one of first impression in this court—is whether the exclusionary rule, having been invoked to suppress evidence in a criminal proceeding, is applicable to a subsequent probation revocation proceeding.[1] A proper resolution of this issue demands a close examination of the purpose and effect of the exclusionary rule and the nature of the probation system and the probation revocation process.

■ The exclusionary rule was adopted to effectuate the Fourth Amendment right of all citizens "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . .." Under this rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

According to appellant, since illegally obtained evidence must be excluded from criminal proceedings, it would be a denial of Fourth Amendment rights to allow that same tainted evidence to be used in a revocation hearing which may also result in loss of liberty for a substantial period of time.[2]

■■ Appellant's argument is defective in that it overlooks the specific rationale of the exclusionary rule and erroneously characterizes the rule as a personal constitutional right. See Calandra v. United States, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The judicially created remedy was designed not to compensate for the unlawful invasion of one's privacy but to deter future unlawful police conduct. As stated by the Supreme Court in Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960):

> The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.

■ The rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons,[3] United States v. Ca-

---

1. In its oral decision revoking probation, the district court noted that one of appellant's probation conditions required him to submit to searches without warrants. It is not clear from the record whether the district court relied on that particular probation condition as a separate ground for admitting the patrol border agent's testimony. In any event, since we conclude that the exclusionary rule is not applicable to the probation revocation proceeding in this case, we do not reach issues raised by appellant regarding the alleged "waiver" of his Fourth Amendment rights. The extent of probationers' and parolees' Fourth Amendment rights have been carefully examined by this court, sitting en banc, in two recent cases. See Latta v. Fitzharris, 521 F.2d 246, No. 71–2909 (9th Cir., Apr. 15, 1975); United States v.

Consuelo-Gonzalez, 521 F.2d 259, No. 73–2122 (9th Cir., Apr. 15, 1975).

2. Revocation of probation here means that appellant is required to serve out a three year prison term.

3. See, e. g., Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) and Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (evidence obtained in violation of Miranda not admissible in prosecutor's case in chief but admissible for impeachment purposes); United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (exclusionary rule not applicable to grand jury proceedings); Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (only victim of unlawful search has standing to in-

landra, 414 U.S. at 348, 94 S.Ct. 613 and any extension of the rule beyond its traditional applicability in criminal proceedings makes sense only if use of the remedy would deter or would likely deter police misconduct.[4]

▮ Thus, we must first determine whether extension of the exclusionary rule to probation revocation hearings would produce any deterrent benefits. If none can be expected from extension of the rule, or if the benefits are insignificant, then exclusion of the seized evidence is unwarranted. However, even if extension of the rule may in fact achieve some deterrence of police misconduct, we must still balance the potential benefits against potential injury to the function of the proceedings in which the illegally obtained evidence is to be admitted or used. If the potential harm substantially outweighs potential benefits, then the rule should not be extended. United States v. Calandra, 414 U.S. at 349, 94 S.Ct. 613.

Application of the exclusionary rule to the probation revocation proceeding in this case would achieve a deterrent effect speculative or marginal at best. Whatever deterrence of police misconduct results from the exclusion of illegally seized evidence from criminal trials, it is unrealistic to assume that application of the rule to probation revocation proceedings would significantly further that goal. *See* United States v. Hill, 447 F.2d 817, 819 (7th Cir. 1971); United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161, 1164 (2d Cir. 1970). Such an extension would deter only police searches and arrests consciously directed toward probationers.[5] In this case, however, the border patrol agents were unaware at the time of the search and arrest that appellant was a probationer.

Even assuming arguendo that double application of the exclusionary rule here would achieve some minimal deterrent effect, we find the potential benefits significantly outweighed by potential damage to the probation system.

▮ The primary purpose of probation, which has become an integral part of our penal system, is to promote the rehabilitation of the criminal by allowing him to integrate into society as a constructive individual, without being confined for the term of the sentence imposed. *Cf.* Morrissey v. Brewer, 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). An important aspect of our probation system is the placing of certain restrictions on the probationer, such as the requirement that he not associate with criminals or travel outside the judicial district. These conditions serve a

voke exclusionary rule); United States v. Schipani, 435 F.2d 26 (2d Cir. 1970), cert. denied, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971) (exclusionary rule not applicable to sentencing proceedings).

4. As it serves the purpose of deterring police misconduct, the exclusionary rule is a "needed, but grudgingly taken, medicament; no more should be swallowed than is needed to combat the disease." Amsterdam, Search, Seizure and Section 2255: A Comment, 112 U.Pa.L.Rev. 378, 389 (1964).

5. Compare Verdugo v. United States, 402 F.2d 599, 612 (9th Cir. 1968), cert. denied, 397 U.S. 925, 90 S.Ct. 931, 25 L.Ed.2d 105 (1970), in which this court applied the exclusionary rule to sentencing proceedings where the police were familiar with past narcotic violators and current suspects and had a personal stake in seeing not only that a violator was convicted, but also that he receive a lengthy sentence. The court reasoned that in the absence of the exclusionary rule an officer would have an incentive, given the proper circumstances, to lawfully obtain only so much evidence as is necessary to assure conviction of the defendant of a single offense, and then proceed to unlawfully obtain evidence of additional offenses which would ensure a long sentence.

Similarly, when the police at the moment of search know that a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing that evidence would be inadmissible in any criminal proceeding. The police have nothing to risk: If the motion to suppress in the criminal proceedings were denied, defendant would stand convicted of a new crime; and if the motion were granted, the defendant would still find himself behind bars due to revocation of probation. Thus, in such circumstances, extension of the exclusionary rule to the probation revocation proceeding may be necessary to effectuate Fourth Amendment safeguards.

dual purpose in that they enhance the chance for rehabilitation while simultaneously affording society a measure of protection. Because violation of probation conditions may indicate that the probationer is not ready or is incapable of rehabilitation by integration into society, it is extremely important that *all reliable* evidence shedding light on the probationer's conduct be available during probation revocation proceedings.[6]

Consequently, to apply the exclusionary rule to probation revocation hearings would tend to frustrate the remedial purposes of the probation system. Not only would extension of the rule impede the court's attempt to assess a probationer's progress or regression, but also it would force probation officers to spend more of their time personally gathering admissible proof concerning those probationers who cannot or will not accept rehabilitation. As Judge Lumbard commented in the context of parole revocation,

> Time devoted to such field work necessarily detracts from time available to encourage those parolees with a sincere desire to avoid the all-too-familiar cycle of recidivism. An even greater potential loss would be in the time available to counsel and supervise—particularly in the early months—those who leave confinement with the question of rehabilitation in real doubt.

United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161, 1165 (2d Cir. 1970) (Lumbard, C. J., concurring).

■ Therefore, in light of the minimal deterrent effect, if any, that would result from extension of the exclusionary rule and the danger such extension would pose to the probation system, we conclude that the Fourth Amendment does not require suppression of evidence in a probation revocation proceeding where, at the time of arrest and search, the police had neither knowledge nor reason to believe that the suspect was a probationer. *See* United States v. Brown, 488 F.2d 94, 95 (5th Cir. 1973); United States v. Hill, 447 F.2d 817, 819 (7th Cir. 1971); United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161, 1163–64 (2d Cir. 1970); United States v. Allen, 349 F.Supp. 749, 753–54 (N.D.Cal. 1972).

Affirmed.

---

**6.** Recognizing that a probation or parole revocation proceeding is not part of the criminal proceedings, Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and that there is a substantial need for information about the probationer's or parolee's behavior, we have allowed introduction in revocation hearings of hearsay evidence and other evidence deemed reliable. *See* United States v. Miller, 514 F.2d 41 (9th Cir. 1975); United States v. Weber, 437 F.2d 1218 (7th Cir.), cert. denied, 402 U.S. 1008, 91 S.Ct. 2189, 29 L.Ed.2d 430 (1971).