We granted the writ to address the issue of whether the exclusionary rule applies in probation revocation hearings. We hold that, absent egregious circumstances, the exclusionary rule is inapplicable in the context of a probation revocation proceeding, and we therefore affirm the judgment of the Court of Criminal Appeals, 516 So.2d 822 (1986).
In 1981, petitioner Francis Caffie pleaded guilty, in the District Court of Mobile County, to one charge of possession of marijuana for personal use, two charges of sale of marijuana, and one charge of receiving stolen property in the second degree. Imposition of sentence was suspended and the petitioner was placed on probation for three years. In 1983, the petitioner was indicted and subsequently convicted for possession of marijuana and hydromorphone *Page 832 
hydrochloride. For purposes of the probation revocation hearing, the parties stipulated that the same evidence presented in petitioner's trial for possession of marijuana and hydromorphone hydrochloride would be presented in the probation revocation proceeding. Thereafter, following a hearing, the petitioner's probation in the four prior cases, as detailed above, was revoked. Subsequent to the revocation of his probation, the petitioner appealed his conviction for possession of marijuana and hydromorphone hydrochloride and also the revocation of his probation to the Court of Criminal Appeals. The Court of Criminal Appeals reversed his conviction for possession of the controlled substances because the conviction was had as a result of an illegal search and arrest, but affirmed the revocation of his probation. Caffie petitioned this Court for a writ of certiorari, contending that the Court of Criminal Appeals erred in holding that the exclusionary rule does not apply in probation revocation hearings and arguing that the evidence presented was insufficient to justify a revocation of his probation.
In reviewing the petitioner's contentions, it is necessary to consider the purpose of the exclusionary rule and the purpose and nature of probation and a probation revocation hearing.
 "The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim:
 " '[T]he ruptured privacy of the victims' homes and effects cannot be restored. Reparation comes too late.' Linkletter v. Walker, 381 U.S. 618, 637, 85 S.Ct. 1731, 1742, 14 L.Ed.2d 601 (1965).
 "Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures:
 " 'The rule is calculated to prevent, not to repair. Its purpose is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it.' Elkins v. United States 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960).
 "Accord, Mapp v. Ohio, . . . 367 U.S. [643], at 656, 81 S.Ct. [1684], at 1692 [6 L.Ed.2d 1081
(1961)], Tehan v. United States, ex rel. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453
(1966); Terry v. Ohio, 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). In sum, the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.
 "Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons. As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served. . . ."
United States v. Calandra, 414 U.S. 338, 347-48, 94 S.Ct. 613,619-20, 38 L.Ed.2d 561 (1974). (Footnote omitted).
 "Accordingly, while evidence obtained in violation of an individual's constitutional rights is properly suppressed in a criminal trial, such evidence has been held admissible in other contexts. See, e.g., United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (evidence unlawfully seized by state law enforcement officials held admissible in federal civil proceedings); Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) (statements obtained in violation of suspect's Miranda rights, while inadmissible in government's case-in-chief, held admissible for impeachment purposes); United States v. Calandra, [414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561] (exclusionary rule held inapplicable in context of grand jury proceeding)."
Thompson v. United States, 444 A.2d 972 (D.C.Ct.App. 1982).
The purpose and nature of probation is addressed inGriffin v. Wisconsin, ___ U.S. ___, 107 S.Ct. 3164,97 L.Ed.2d 709 (1987), wherein Justice Scalia wrote: *Page 833 
 "Probation, like incarceration, is 'a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.' G. Killinger, H. Kerper, P. Cromwell, Probation and Parole in the Criminal Justice System 14 (1976); see also 18 U.S.C. § 3651 (1982 ed. and Supp. III) (probation imposed instead of imprisonment); Wis. Stat. § 973.09 (1985-1986) (same). Probation is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum security facility to a few hours of mandatory community service. A number of different options lie between those extremes, including confinement in a medium or minimum security facility, work-release programs, 'halfway houses,' and probation — which can itself be more or less confining depending upon the number and severity of restrictions imposed. See, e.g., 18 U.S.C. § 3563 (1982 ed., Supp. III) (effective Nov. 1, 1987) (probation conditions authorized in federal system include requiring probationers to avoid commission of other crimes; to pursue employment; to avoid certain occupations, places, and people; to spend evenings or weekends in prison; and to avoid narcotics or excessive use of alcohol). To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.' Morrissey v. Brewer, 408 U.S. 471, 480 [92 S.Ct. 2593, 2600, 33 L.Ed.2d 484] (1972).
 "These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. See State v. Tarrell, 74 Wis.2d 647, 652-653, 247 N.W.2d 696, 700 (1976). These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed. Recent research suggests that more intensive supervision can reduce recidivism, see Petersilia, Probation and Felony Offenders, 49 Fed. Probation 9 (June 1985), and the importance of supervision has grown as probation has become an increasingly common sentence for those convicted of serious crimes, see id., at 4. Supervision, then, is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. . . ."
___ U.S. at ___, 107 S.Ct. at 3168 (Footnote omitted).
At this point, it is important to address the question of what process a probationer is due in a probation revocation proceeding. In Gagnon v. Scarpelli, 411 U.S. 778,93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the United States Supreme Court found the due process requirements of parole revocation proceedings set out in Morrissey v. Brewer, 408 U.S. 471,92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), to be applicable to probation revocation hearings. Due process does not require the full range of evidentiary and procedural safeguards found in criminal prosecutions, because "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissable in an adversary criminal trial." Morrissey v. Brewer, 408 U.S. at 489,92 S.Ct. at 2604. The Supreme Court also noted that the full panoply of rights does not apply because "[r]evocation deprives an individual not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on the observance of special [probation] restrictions." 408 U.S. at 480, 92 S.Ct. at 2600.
In Alabama, strict rules of evidence are not required to be observed in revocation hearings, and evidence that may not be admissible in a criminal prosecution may be admissible in parole or probation proceedings. Armstrong v. State, 294 Ala. 100, 312 So.2d 620 (1975).
 " 'There is no definite criterion or measure of proof necessary to justify the revocation of one's probation.' Wright v. State, 349 So.2d 124
(Ala.Cr.App. 1977). The evidence need not 'be strong enough *Page 834 
to convince the court beyond a reasonable doubt that the probationer has violated a term of his probation,' Carter v. State 389 So.2d 601
(Ala.Cr.App. 1980); it needs only to reasonably satisfy the court of the truth of the charge. Goodrum v. State, 418 So.2d 942 (Ala.Cr.App. 1982). Absent a gross abuse of discretion, the trial court's ruling in a probation revocation will not be disturbed by this Court. Wright, supra."
Rice v. State, 429 So.2d 686, 687 (Ala.Cr.App. 1983).
 "[T]he liberty of a [probationer], although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grevious loss' on the probationer and often on others. . . . By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal."
Morrissey, 408 U.S. at 482, 92 S.Ct. at 2601.
The "stages" of the process that is due are set forth inMorrissey, supra. In writing Morrissey, the Supreme Court bore in mind that the interests of both the state and the probationer will be furthered by an effective but informal hearing. The Court emphasized that it did not intend to equate the "second stage" of parole revocation to a criminal prosecution.
 "A parole revocation proceeding is not an adversarial proceeding. A parolee remains, 'while on parole, in the legal custody and under the control of the Attorney General.' 18 U.S.C. § 4203 (1964); Anderson v. Corall, 263 U.S. 193, 196, 44 S.Ct. 43, 68 L.Ed. 247 (1923). A parole revocation proceeding is concerned not only with protecting society, but also, and most importantly, with rehabilitating and restoring to useful lives those placed in the custody of the Parole Board." United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161, at 1163 (2d Cir. 1970).
"[T]he State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." Morrissey, 408 U.S. at 483,92 S.Ct. at 2601.
The precise question before us is whether evidence seized incident to an illegal search and arrest was improperly considered at the petitioner's probation revocation hearing.
When faced with that question, we must apply the balance-of-interests analysis utilized by the Supreme Court in determining whether to extend the exclusionary rule. InUnited States v. Calandra, supra, the Court, when faced with the question of whether the exclusionary rule should be extended to grand jury proceedings, stated: "In deciding whether to extend the exclusionary rule to grand jury proceedings, we must weigh the potential injury to the historic role and functions of the grand jury against the potential benefits of the rule as applied in this context."414 U.S. at 349, 94 S.Ct. at 620. This balancing test has been reaffirmed by the Supreme Court in subsequent decisions, see Stone v.Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976),United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021,49 L.Ed.2d 1046 (1976), and has been applied as well by courts of appeals dealing with the present issue, see, e.g., United States v.Winsett, 518 F.2d 51 (9th Cir. 1975) (minimal deterrent effect of extending exclusionary rule to probation revocation proceedings outweighed by dangers the rule would pose to probation system); United States v. Workman, 585 F.2d 1205 (4th Cir. 1978) (applying Calandra balancing test to conclude that exclusionary rule does apply to probation revocation proceedings).
Accordingly, in determining whether to apply the exclusionary rule to probation revocation proceedings, we must weigh the potential benefit that would result — deterrence of police misconduct — against the potential harm to the "fact-finding" process of the probation revocation system.
The exclusionary rule was adopted to effectuate the Fourth Amendment right of all citizens "to be secure in their persons, houses, papers, and effects, against *Page 835 
unreasonable searches and seizures." Under this rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure. Weeks v. United States, 232 U.S. 383,34 S.Ct. 341, 58 L.Ed. 652 (1914); Mapp v. Ohio, 367 U.S. 643,81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405,82 L.Ed.2d 677 (1984), the Court laid to rest the notion that the exclusionary rule is a necessary corollary of the Fourth Amendment or that the rule is required by the conjunction of the Fourth and Fifth Amendments. It stated:
 "The Fifth Amendment theory has not withstood critical analysis or the test of time, see Andresen v. Maryland, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), and the Fourth Amendment 'has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons.' Stone v. Powell, 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976).
 "The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure 'work[s] no new Fourth Amendment wrong.' United States v. Calandra, 414 U.S. 338, 354, 94 S.Ct. 613, 623, 38 L.Ed.2d 561 (1974). The wrong condemned by the Amendment is 'fully accomplished' by the unlawful search or seizure itself, ibid., and the exclusionary rule is neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered.' Stone v. Powell, supra, 428 U.S., at 540, 96 S.Ct., at 3073
(WHITE, J., dissenting). The rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' United States v. Calandra, supra, 414 U.S., at 348, 94 S.Ct., at 620."
468 U.S. at 906, 104 S.Ct. at 3411-12.
 "The rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons, United States v. Calandra, 414 U.S. at 348, 94 S.Ct. 613, and any extension of the rule beyond its traditional applicability in criminal proceedings makes sense only if use of the remedy would deter or would likely deter police misconduct.
 "Thus, we must first determine whether extension of the exclusionary rule to probation revocation hearings would produce any deterrent benefits. If none can be expected from extension of the rule, or if the benefits are insignificant, then exclusion of the seized evidence is unwarranted. However, even if extension of the rule may in fact achieve some deterrence of police misconduct, we must still balance the potential benefits against potential injury to the function of the proceedings in which the illegally obtained evidence is to be admitted or used. If the potential harm substantially outweighs potential benefits, then the rule should not be extended. United States v. Calandra, 414 U.S. at 349, 94 S.Ct. 613."
United States v. Winsett, 518 F.2d 51 at 53 (9th Cir. 1975).
Having weighed the potential benefits against the potential injury to the "factfinding" process of the probation revocation proceeding, we are of the opinion that the deterrent purpose of the exclusionary rule is adequately served by the exclusion of the unlawfully seized evidence in the criminal prosecution. The chance of achieving a deterrent effect in this case, through the application of the exclusionary rule to the probation revocation proceeding, is "speculative or marginal at best." "It is unrealistic to assume that application of the rule to probation revocation proceedings would significantly further the goal of the exclusionary rule. Such an extension of the exclusionary rule to these proceedings would deter only police searches and arrests consciously directed toward probationers."Winsett, supra, at 54. There is no evidence in this case that the police officers were aware at the time of the *Page 836 
search or arrest that the petitioner was a probationer.
"A [probation] revocation proceeding is concerned not only with protecting society, but also, and most importantly, with rehabilitating and restoring to useful lives those placed in the custody of [our correctional systems.] To apply the exclusionary rule to [probation] revocation proceedings would tend to obstruct the [probation] system in accomplishing its remedial purposes." Sperling, at 1163.
 "In determining whether a defendant has violated probation, the court should have available to it any reliable information pertinent to the probationary relationship. Blanket application of the exclusionary rule would require the court to make its decision with a less than complete picture and would thereby undermine the framework of trust between the court and the defendant on which the probationary relationship depends. We conclude that those considerations weigh against the extension of the exclusionary rule beyond the criminal trial setting."
State v. Kissell, 83 Or. App. 630, 635-36, 732 P.2d 940, 942
(1987), review dismissed, 303 Or. 369, 736 P.2d 564 (1987).
For the foregoing reasons, we find the potential benefits of extending the exclusionary rule to probation revocation proceedings to be significantly outweighed by the potential damage to the probation system.
Notedly, under certain circumstances, consideration iay weigh in favor of the extension of the exclusionary rule to probation revocation proceedings. For example, where illegal acts of the police were directed specifically at a probationer or where they shock the conscience, the deterrent effect that exclusion of such evidence would have outweighs the need of the sentencing court for full and and reliable information. See,United States v. Wiygul, 578 F.2d 577 (5th Cir. 1978); Winsett,supra; United States v. Farmer, 512 F.2d 160 (6th Cir.), cert. denied, 423 U.S. 987, 96 S.Ct. 397, 46 L.Ed.2d 305 (1975);State v. Davis, 375 So.2d 69 (La. 1979).
The petitioner's second claim is that the lower court erred in finding that he was in violation of his probation. We disagree.
The standard of review of an order revoking probation
 "is whether the lower court has abused its discretion, and the proof required to support a judge's discretionary order revoking probation is not the same proof required for a criminal conviction. Martin v. State, 46 Ala. App. 310, 241 So.2d 339 [1970].
 "All that is required is that the evidence presented reasonably satisfy the judge. Fiorella v. State, 40 Ala. App. 587, 121 So.2d 875
(1960), cert denied, 270 Ala. 737, 121 So.2d 881
(1960); Holman v. State, 43 Ala. App. 509, 193 So.2d 770 (1966), cert denied, 280 Ala. 714, 193 So.2d 773 (1967); Martin v. State, supra.
 "A formal conviction of a crime is not essential to enable a judge to revoke his order of probation. Fiorella v. State, supra; Dixon v. State, 42 Ala. App. 341, 164 So.2d 509 (1964)."
Armstrong v. State, 55 Ala. App. 37, at 45, 312 So.2d 607, at 615 (Ala.Crim.App. 1974).
Accordingly, the fact that the petitioner's conviction was reversed subsequent to the revocation of his probation is of no consequence in the present case, because the trial court was reasonably satisfied from the evidence that the petitioner was in violation of his probation.
 "Probation is a matter of grace given to the offender by the trial judge on the basis of an independent investigation and hearing. Surely the same judge who has prescribed probation can determine whether a law has been violated and should be authorized to exercise the same discretion in determining whether a condition of the suspended sentence has been broken."
Armstrong, supra, 55 Ala. App. at 46, 312 So.2d at 616.
We have reviewed the record and, in light of our decision on the petitioner's first claim of error, we find that there was sufficient evidence to justify the trial court in finding that the petitioner had violated the *Page 837 
terms of his probation. Therefore, the judgment of the Court of Criminal Appeals was correct.
AFFIRMED.
MADDOX, BEATTY and STEAGALL, JJ., concur.
JONES, SHORES and ADAMS, JJ., concur in result.
TORBERT, C.J., and ALMON, J., not sitting.
 ON APPLICATION FOR REHEARING