(873 P.2d 208)

No. 69,869

STATE OF KANSAS, *Appellee*, v. CURTIS L. TURNER, *Appellant*.

Rev'd 257 Kan. 19, 891 P.2d 317 (1995).

Opinion filed April 29, 1994.

*Daniel E. Monnat*, of Monnat & Spurrier, Chartered, of Wichita, for appellant.

*David Lowden*, assistant district attorney, *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before ROYSE, P.J., LEWIS and PIERRON, JJ.

ROYSE, J.: Curtis Turner appeals the district court decision to revoke his probation and reinstate his original sentence in three separate cases. The issue presented in this appeal is one of first impression: Whether the exclusionary rule applies in a probation revocation hearing.

On January 25, 1991, Turner pled guilty in 90 CR 23 to five counts of burglary and four counts of theft. He was sentenced to a controlling term of two to five years' imprisonment. On the same day, Turner pled guilty in 90 CR 799 to three counts of burglary and three counts of theft. He received a controlling sentence of three to seven years, with the sentence imposed in 90 CR 799 to run consecutive to the sentence imposed in 90 CR 23. The court later placed Turner on probation in both cases for a period of five years. As a condition of his probation, Turner was required to obey the laws of the State of Kansas.

On September 18, 1991, Turner pled guilty in 91 CR 436 to conspiracy to possess marijuana with intent to sell. He was sentenced to a term of one to two years and again placed on probation for five years. One of the conditions of this probation was that Turner obey the laws of the State of Kansas.

On November 6, 1992, law enforcement authorities executed a search warrant at Turner's home in Wichita. During the search, the officers recovered substances which were alleged to be marijuana and cocaine. Turner was taken into custody and given a *Miranda* warning. He admitted under questioning to selling cocaine. On November 18, 1992, Turner was charged in 92 CR 2144 with possession of cocaine with intent to sell, possession of marijuana with intent to sell, and two counts of no tax stamp. On that day, Turner's probation officer likewise filed a warrant based on the evidence recovered on November 6, alleging that Turner had violated the conditions of his probation.

The district court conducted a combination preliminary hearing/probation revocation hearing on December 22, 1992. The court denied Turner's request that the probation revocation proceedings be postponed until disposition of the new charges against him. During the hearing, the State offered the testimony of Wichita police detective Alan Prince. On cross-examination, Prince testified as follows:

"Q: Now, when you went to the residence . . . to execute the search warrant, you knew that Mr. Turner was on probation; correct?

"A: Yes, I did.

"Q: And one of the goals of executing the search warrant at the time and date that you did was for the purposes of obtaining evidence to revoke his probation; correct?

"A: I really didn't have any—if I wanted to—he wasn't charged with any kind of probation violation when he was booked. That was never—that might have been a forethought, but the basic goal that day was to secure the residence, search the residence for any narcotics, and charge him for those narcotics that were located in the residence.

"Q: Okay. And, as a forethought, you were aware that if you found narcotics in the residence and were able to charge him with a new crime, that that would probably result in a probation revocation; correct?

"A: I was hoping it would, yes."

At the conclusion of the hearing, the court bound Turner over on the new charges and revoked his probation in the three earlier cases.

Several months later, prosecutors determined that the affidavit supporting the warrant to search Turner's home contained false statements made either deliberately or with reckless disregard for the truth. The individual in charge of the search and of the

information contained in the affidavit supporting the search warrant was Prince. Because the warrant to search Turner's home had been illegally obtained, the State determined the evidence recovered in the search was inadmissible and dismissed the charges against Turner in 92 CR 2144.

Turner subsequently filed a motion to reconsider revocation of his probation in each of the three earlier cases. Turner argued that the exclusionary rule should be applied in a probation revocation hearing. The State conceded that, if the exclusionary rule were applicable, then there was no admissible evidence to support revocation of Turner's probation. The district court denied Turner's motion, finding as a matter of public policy that the exclusionary rule should not apply in a probation revocation hearing. The district court commented that, if Prince deliberately lied or intentionally misled a federal magistrate, he could be prosecuted under state law and subjected to an internal affairs investigation.

The exclusionary rule provides that evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of illegal conduct. The rule does not create a personal constitutional right. Instead, its prime purpose is to deter future unlawful police conduct and effectuate the guarantees of the Fourth Amendment. A balancing test, weighing the costs of exclusion against its benefits, is used in deciding whether to apply the exclusionary rule in a given situation. The need for deterrence and the rationale for excluding evidence are strongest where the government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search. *United States v. Calandra*, 414 U.S. 338, 347-48, 38 L. Ed. 2d 561, 94 S. Ct. 613 (1974).

A majority of courts have concluded that, as a general rule, the exclusionary rule does not apply in probation revocation proceedings. See, *e.g.*, *United States v. Finney*, 897 F.2d 1047, 1048 (10th Cir. 1990); *United States v. Bazzano*, 712 F.2d 826, 830-34 (3d Cir. 1983), *cert. denied* 465 U.S. 1078 (1984); *State v. Sears*, 553 P.2d 907, 913 (Alaska 1976); *Payne v. Robinson*, 207 Conn. 565, 571, 541 A.2d 504, *cert. denied* 488 U.S. 898 (1988); *Commonwealth v. Olsen*, 405 Mass. 491, 494-95, 541 N.E.2d 1003 (1989); *Richardson v. State*, 841 P.2d 603, 605 (Okla. Crim. 1992). But see, *e.g.*, *United States v. Workman*, 585 F.2d 1205,

1211 (4th Cir. 1978); *State v. Burkholder*, 12 Ohio St. 3d. 205, 207-08, 466 N.E.2d 176, *cert. denied* 469 U.S. 1062 (1984). See also 1 LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 1.6(g) (2d ed. 1987); Annot., 30 A.L.R. Fed. 824; Annot., 77 A.L.R.3d 636. For example, the 10th Circuit concluded that application of the exclusionary rule in a probation proceeding would be "redundant," since deterrence is accomplished by applying the rule at trial. *Finney*, 897 F.2d at 1048.

An exception to the general rule is recognized where the unlawful search is conducted by a law enforcement officer who knows that the victim of the search is on probation. See, *e.g.*, *United States v. Vandemark*, 522 F.2d 1019, 1022 (9th Cir. 1975); *Sears*, 553 P.2d at 914; *Ex parte Caffie*, 516 So. 2d 831, 835-36 (Ala. 1987); *Payne*, 207 Conn. at 573; *State v. Davis*, 375 So. 2d 69, 75 (La. 1979); *Olsen*, 405 Mass. at 496; *State v. Lombardo*, 306 N.C. 594, 600, 295 S.E.2d 399 (1982). The rationale for this exception was explained in *United States v. Winsett*, 518 F.2d 51, 54 n.5 (9th Cir. 1975):

"[W]hen the police at the moment of search know that a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing that evidence would be inadmissible in any criminal proceeding. The police have nothing to risk: If the motion to suppress in the criminal proceedings were denied, defendant would stand convicted of a new crime; and if the motion were granted, the defendant would still find himself behind bars due to revocation of probation. Thus, in such circumstances, extension of the exclusionary rule to the probation revocation proceeding may be necessary to effectuate Fourth Amendment safeguards."

See *Bazzano*, 712 F.2d at 833 n.1; *Caffie*, 516 So. 2d at 836; *People v. Ressin*, 620 P.2d 717, 720-21 (Colo. 1980); *Payne*, 207 Conn. at 573; *Kain v. State*, 378 N.W.2d 900, 902 (Iowa 1985). On the benefit side, then, these courts have recognized that applying the exclusionary rule in these circumstances is necessary to preserve the deterrent effect of the rule. See also *Verdugo v. United States*, 402 F.2d 599, 613 (9th Cir. 1968), *cert. denied* 402 U.S. 961 (1971) (where unlawful search conducted after charges filed against defendant, improper to consider illegally obtained evidence at defendant's sentencing hearing).

The State suggests that deterrence from applying the exclusionary rule in these circumstances is unnecessary. The State

contends that law enforcement officers can be penalized in other ways, such as criminal prosecutions or internal affairs investigations. This argument, if true, would do away with the need for the exclusionary rule in all circumstances. The adoption of the exclusionary rule indicates that the State's suggested alternatives are insufficient by themselves to deter illegal searches. See *Mapp v. Ohio*, 367 U.S. 643, 651-52, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, *reh. denied* 368 U.S. 871 (1961).

In examining the costs of extending the exclusionary rule to probation revocation proceedings where the probationer has been subjected to an unlawful search, it is appropriate to consider the nature of probation. Probation is a procedure under which the defendant, found guilty of a crime, is released by the court after imposition of sentence, without imprisonment except as provided in felony cases, subject to conditions imposed by the court and subject to supervision by the probation service of the court. K.S.A. 1993 Supp. 21-4602(c). If a defendant is shown to have violated the conditions of probation, an order revoking probation is within the discretion of the district court. *Swope v. Musser*, 223 Kan. 133, 135-36, 573 P.2d 587 (1977).

The Supreme Court has noted:

"The basic purpose for probation is to provide a program whereby an individual is given the opportunity to rehabilitate himself without institutional confinement under the supervision of a probation official and under the continuing power of the district court to impose institutional punishment for the original offense if the probationer abuses this opportunity." *State v. Dubish*, 236 Kan. 848, 853, 696 P.2d 969 (1985).

The State has not argued that this purpose necessitates the consideration of unlawfully obtained evidence in a probation revocation proceeding. Nor can it be said that it was necessary to mislead a federal magistrate in order to show the district court that Turner had abused the opportunity for rehabilitation. Instead, the rules governing probation and probation revocation in Kansas support the conclusion that "the mechanisms necessary to keep the probationer in check are already in place without the need to resort to cutting back the constitutional guarantees that the exclusionary rule is designed to protect." *Burkholder*, 12 Ohio St. 3d at 207.

The State points out that probation may be revoked based on the commission of another crime, even if the defendant is never charged or convicted. See K.S.A. 1993 Supp. 22-3716(b); *State v. Rasler*, 216 Kan. 292, 295, 532 P.2d 1077 (1975). This argument misses the point. Turner does not contend that a conviction is required before probation can be revoked. He attacks the admissibility of the evidence which forms the basis for his probation revocation. If there is no evidence to establish the violation, the district court has no authority to exercise its discretion to revoke probation. *State v. Malbrough*, 5 Kan. App. 2d 295, 296, 615 P.2d 165 (1980).

In summary, we find persuasive the numerous decisions from other jurisdictions which conclude that the exclusionary rule should be applied in probation revocation hearings where the unlawful search is conducted by a law enforcement officer who knows that the victim of the search is a probationer. The deterrence which may be achieved by applying the rule in these circumstances outweighs the cost of removing illegally obtained evidence from the district court's consideration.

Under the circumstances of this case, another purpose of the exclusionary rule merits consideration. The "imperative of judicial integrity" was referenced in *Elkins v. United States*, 364 U.S. 206, 222, 4 L. Ed. 2d 1669, 80 S. Ct. 1437 (1960), emphasizing that the courts must not become "accomplices in the willful disobedience of a Constitution they are sworn to uphold." 364 U.S. at 223. While this purpose has received less attention than deterrence in the more recent cases, it is surely pertinent here where the Fourth Amendment violation consisted of misrepresentations to a federal magistrate.

For all the foregoing reasons, we conclude that the district court erred in refusing to exclude evidence seized unlawfully. Because the State concedes that application of the exclusionary rule leaves it with no admissible evidence to support revocation, no remand is required in this particular case. Accordingly, the decision of the district court revoking Turner's probation on the basis of that evidence is reversed.

Reversed.