No. 69,869

STATE OF KANSAS, *Appellee*, v. CURTIS L. TURNER, *Appellant.*
(891 P.2d 317)

Opinion filed February 28, 1995.

*Daniel E. Monnat*, of Monnat & Spurrier, Chartered, of Wichita, argued the cause and was on the briefs for appellant.

*David Lowden*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: Curtis L. Turner appeals from the revocation of his probation and the reinstatement of his original sentence in three separate cases. The sole issue is the applicability of the exclusionary rule to probation revocation proceedings. The district court held the rule to be inapplicable to probation revocation proceedings. The Court of Appeals held the rule should be applied where, as here, the involved police officers knew the defendant was on probation and reversed the decision of the district court revoking defendant's probation. *State v. Turner*, 19 Kan. App. 2d 535, 873 P.2d 208 (1994). The matter is before us on petition for review.

The applicable facts are not in dispute and are summarized in the opinion of the Court of Appeals as follows:

"On January 25, 1991, Turner pled guilty in 90 CR 23 to five counts of burglary and four counts of theft. He was sentenced to a controlling term of two

to five years' imprisonment. On the same day, Turner pled guilty in 90 CR 799 to three counts of burglary and three counts of theft. He received a controlling sentence of three to seven years, with the sentence imposed in 90 CR 799 to run consecutive to the sentence imposed in 90 CR 23. The court later placed Turner on probation in both cases for a period of five years. As a condition of his probation, Turner was required to obey the laws of the State of Kansas.

"On September 18, 1991, Turner pled guilty in 91 CR 436 to conspiracy to possess marijuana with intent to sell. He was sentenced to a term of one to two years and again placed on probation for five years. One of the conditions of this probation was that Turner obey the laws of the State of Kansas.

"On November 6, 1992, law enforcement authorities executed a search warrant at Turner's home in Wichita. During the search, the officers recovered substances which were alleged to be marijuana and cocaine. Turner was taken into custody and given a *Miranda* warning. He admitted under questioning to selling cocaine. On November 18, 1992, Turner was charged in 92 CR 2144 with possession of cocaine with intent to sell, possession of marijuana with intent to sell, and two counts of no tax stamp. On that day, Turner's probation officer likewise filed a warrant based on the evidence recovered on November 6, alleging that Turner had violated the conditions of his probation.

"The district court conducted a combination preliminary hearing/probation revocation hearing on December 22, 1992. The court denied Turner's request that the probation revocation proceedings be postponed until disposition of the new charges against him. During the hearing, the State offered the testimony of Wichita police detective Alan Prince. On cross-examination, Prince testified as follows:

'Q: Now, when you went to the residence . . . to execute the search warrant, you knew that Mr. Turner was on probation; correct?

'A: Yes, I did.

'Q: And one of the goals of executing the search warrant at the time and date that you did was for the purposes of obtaining evidence to revoke his probation; correct?

'A: I really didn't have any—if I wanted to—he wasn't charged with any kind of probation violation when he was booked. That was never—that might have been a forethought, but the basic goal that day was to secure the residence, search the residence for any narcotics, and charge him for those narcotics that were located in the residence.

'Q: Okay. And, as a forethought, you were aware that if you found narcotics in the residence and were able to charge him with a new crime, that that would probably result in a probation revocation; correct?

'A: I was hoping it would, yes.

At the conclusion of the hearing, the court bound Turner over on the new charges and revoked his probation on the three earlier cases.

"Several months later, prosecutors determined that the affidavit supporting the warrant to search Turner's home contained false statements made either

deliberately or with reckless disregard for the truth. The individual in charge of the search and of the information contained in the affidavit supporting the search warrant was Prince. Because the warrant to search Turner's home had been illegally obtained, the State determined the evidence recovered in the search was inadmissible and dismissed the charges against Turner in 92 CR 2144.

"Turner subsequently filed a motion to reconsider revocation of his probation in each of the three earlier cases. Turner argued that the exclusionary rule should be applied in a probation revocation hearing. The State conceded that, if the exclusionary rule were applicable, then there was no admissible evidence to support revocation of Turner's probation. The district court denied Turner's motion, finding as a matter of public policy that the exclusionary rule should not apply in a probation revocation hearing. The district court commented that, if Prince deliberately lied or intentionally misled a federal magistrate, he could be prosecuted under state law and subjected to an internal affairs investigation." 19 Kan. App. 2d 535, 536-37.

The Fourth Amendment of the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of an illegal search and seizure. *United States v. Calandra*, 414 U.S. 338, 347, 38 L. Ed. 2d 561, 94 S. Ct. 613 (1974).

The primary purpose of the exclusionary rule is to deter unlawful police conduct. The rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. at 348. "The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 217, 4 L. Ed. 2d 1669, 80 S. Ct. 1437 (1960).

The rule is neither to be imposed in a vacuum nor administered mechanically. Rather, it should be applied in light of its deterrent purpose. *United States v. Calandra*, 414 U.S. at 348; *United States v. Winsett*, 518 F.2d 51 (9th Cir. 1975). Any extension of the rule beyond its traditional applicability in criminal proceedings is warranted only where the use of the remedy would result in appre-

ciable deterrence of police misconduct. *United States v. Leon,* 468 U.S. 897, 909, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984). Thus, in deciding whether or not to extend the exclusionary rule, the likelihood that the rule's deterrent effect will be achieved should be balanced against the cost of withholding reliable information from the truth-seeking process. *Illinois v. Krull,* 480 U.S. 340, 347, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987); *United States v. Calandra,* 414 U.S. at 351-52. (*Calandra* denied extension of the rule to grand jury proceedings.)

Under *Calandra,* and in subsequent cases, the question whether to apply the exclusionary rule is determined by weighing the extent to which its application will deter law enforcement officials from committing unconstitutional acts against the extent to which its application will deflect the truth-finding process, free the guilty, and generate disrespect for the law and the administration of justice. *Stone v. Powell,* 428 U.S. 465, 485-95, 49 L. Ed. 2d 1067, 96 S. Ct. 3037 (1976) (exclusionary rule not applied during federal habeas corpus review).

The single issue before this court is whether the exclusionary rule should apply to a probation revocation hearing. The district court held it should not. The Court of Appeals held that it should, in circumstances where the search was conducted by a law enforcement officer who knew that the victim of the search was a probationer.

A majority of federal circuits, including the 10th Circuit, have held that the exclusionary rule does not apply to a probation revocation hearing. *United States v. Finney,* 897 F.2d 1047 (10th Cir. 1990); *United States v. Bazzano,* 712 F.2d 826, 830-34 (3d Cir. 1983), *cert. denied* 465 U.S. 1078 (1984); *United States v. Frederickson,* 581 F.2d 711, 713 (8th Cir. 1978); *United States v. Winsett,* 518 F.2d at 53-55; *United States v. Farmer,* 512 F.2d 160, 162-63 (6th Cir.), *cert. denied* 423 U.S. 987 (1975); *United States v. Brown,* 488 F.2d 94, 95 (5th Cir. 1973); *United States v. Hill,* 447 F.2d 817, 819 (7th Cir. 1971); *United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161, 1163 (2d Cir. 1970) (parole revocation). See also Annot., Admissibility, In Federal Probation Revocation Proceeding, of Evidence Obtained Through

Unreasonable Search and Seizure or in Absence of Miranda Warnings, 30 A.L.R. Fed. 824.

One circuit has held that the exclusionary rule does extend to a probation revocation hearing. *United States v. Workman*, 585 F.2d 1205, 1211 (4th Cir. 1978).

Several state courts that have considered the issue have concluded that, as a general rule, the exclusionary rule does not apply in a probation revocation proceeding. See, *e.g.*, *State v. Sears*, 553 P.2d 907, 913 (Alaska 1976); *State v. Alfaro*, 127 Ariz. 578, 623 P.2d 8 (1980); *Payne v. Robinson*, 207 Conn. 565, 571, 541 A.2d 504, *cert. denied* 488 U.S. 898 (1988); *Commonwealth v. Olsen*, 405 Mass. 491, 494-95, 541 N.E.2d 1003 (1989); *Richardson v. State*, 841 P.2d 603, 605 (Okla. Crim. 1992). *C.f. State v. Swartzendruber*, 120 Or. App. 552, 853 P.2d 842 (1993) (suppression of evidence based on state constitutional grounds). See also Annot., Admissibility, in State Probation Revocation Proceedings, of Evidence Obtained Through Illegal Search and Seizure, 77 A.L.R. 3d 636.

Some courts have created an exception to the general rule where the unlawful search is conducted by a law enforcement officer who knows that the subject of the search is a probationer. See, *e.g.*, *United States v. Vandemark*, 522 F.2d 1019, 1022 (9th Cir. 1975); *Sears*, 553 P.2d at 914; *Ex parte Caffie*, 516 So. 2d 831, 835-36 (Ala. 1987); *Payne*, 207 Conn. at 573; *State v. Davis*, 375 So. 2d 69, 75 (La. 1979); *Olsen*, 405 Mass. at 496; *People v. Perry*, 201 Mich. App. 347, 505 N.W.2d 909 (1993); *State v. Lombardo*, 306 N.C. 594, 600, 295 S.E.2d 399 (1982). Some courts which recognize the exception have concluded that mere knowledge that the subject of an illegal search was a probationer is not enough. These courts have found that, absent a demonstration of police harassment of the probationer, or evidence that the illegal search was carried out because of the subject's probationary status, the exclusionary rule would not apply. See, *e.g.*, *United States v. Wiygul*, 578 F.2d 577 (1978); *People v. Ressin*, 620 P.2d 717 (Colo. 1980); *State v. Jacobs*, 229 Conn. 385, 641 A.2d 1351 (1994); *People v. Stewart*, 242 Ill. App. 3d 599, 610 N.E.2d 197 (1993).

Applying the balancing test set forth in *Calandra*, 414 U.S. 338, we must balance the potential injury to the probation process against the potential benefits of the rule as applied. In other words, would the suppression of illegally obtained evidence at a probation revocation hearing fulfill the deterrent value of the exclusionary rule as opposed to society's interest in the rehabilitation of offenders in a probationary setting?

The primary purpose of probation is the successful rehabilitation of the offender. Toward that end courts are authorized to impose conditions and restrictions on the probationer's liberty to afford the probationer a setting conducive to the rehabilitative process. See K.S.A. 1993 Supp. 21-4610.

We addressed the nature of probation in *State v. Dubish*, 236 Kan. 848, 853-54, 696 P.2d 969 (1985), where we stated:

"The basic purpose for probation is to provide a program whereby an individual is given the opportunity to rehabilitate himself without institutional confinement under the supervision of a probation official and under the continuing power of the district court to impose institutional punishment for the original offense if the probationer abuses this opportunity. It permits the sentencing judge to give a convicted person the opportunity to mend his ways and have his freedom under conditions imposed. Probation is not granted out of a spirit of leniency, but is granted as a result of the evaluation of the characteristics of the offender and a determination that the offender may respond best to supervised control within the community and that public safety will not be endangered. On the other hand, confinement is for individuals who are required to be isolated from the community in order to protect society or to provide a closely controlled environment for individuals who can learn to adjust their attitude or behavior for later release into the community. Confinement may serve as a deterrent to others in the community."

In *United States v. Winsett*, 518 F.2d at 54-55, the 9th Circuit set forth the reasons favoring the admission of illegally gathered evidence at probation revocation hearings as follows:

"An important aspect of our probation system is the placing of certain restrictions on the probationer, such as the requirement that he not associate with criminals or travel outside the judicial district. These conditions serve a dual purpose in that they enhance the chance for rehabilitation while simultaneously affording society a measure of protection. Because violation of probation conditions may indicate that the probationer is not ready or is incapable of rehabilitation by integration into society, it is extremely important that *all reliable* evidence shed-

ding light on the probationer's conduct be available during probation revocation proceedings.

"Consequently, to apply the exclusionary rule to probation revocation hearings would tend to frustrate the remedial purposes of the probation system. Not only would extension of the rule impede the court's attempt to assess a probationer's progress or regression, but also it would force probation officers to spend more of their time personally gathering admissible proof concerning those probationers who cannot or will not accept rehabilitation."

*Winsett* also discusses the risks inherent in blindly admitting all illegally obtained evidence in probation revocation hearings as follows:

"[W]hen the police at the moment of the search know that a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing that evidence would be inadmissible in any criminal proceeding. The police have nothing to risk: If the motion to suppress in the criminal proceedings were denied, defendant would stand convicted of a new crime; and if the motion were granted, the defendant would still find himself behind bars due to revocation of probation. Thus, in such circumstances, extension of the exclusionary rule may be necessary to effectuate Fourth Amendment safeguards." *United States v. Winsett,* 518 F.2d at 54 n.5.

A cogent rationale for not applying the exclusionary rule to probation revocation proceedings is set forth in *State v. Alfaro,* 127 Ariz. at 580, as follows:

"'[T]he suppression of probative but tainted evidence exacts a costly toll upon the ability of the courts to ascertain the truth . . . .' *United States v. Payner,* 447 U.S. 727, 734, 100 S.Ct. 2439, 2445 (1980). We will pay the price where the purpose of deterrence is served but if application of the exclusionary rule does not effectuate deterrence then the exclusionary rule is being misapplied. It can not be said application of the exclusionary rule makes evidence more or less reliable nor can it be said the rule furthers the purposes of probation. Moreover, the Supreme Court has said: 'Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence is made inadmissible to the prosecution in its case in chief.' *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 645 (1971).

"We think any additional benefit in double application of the exclusionary rule is outweighed by the harm done to the rehabilitative goal of probation. Rather than saying the police will have less incentive to obey the law, we think the probationer will have greater incentive to obey the terms of his probation if any reliable information will be available at a probation revocation hearing. We hold the exclusionary rule does not apply in probation violation hearings."

The rationale employed by the Court of Appeals in reversing the district court's revocation of defendant's probation is as follows:

"In summary, we find persuasive the numerous decisions from other jurisdictions which conclude that the exclusionary rule should be applied in probation revocation hearings where the unlawful search is conducted by a law enforcement officer who knows that the victim of the search is a probationer. The deterrence which may be achieved by applying the rule in these circumstances outweighs the cost of removing illegally obtained evidence from the district court's consideration.

"Under the circumstances of this case, another purpose of the exclusionary rule merits consideration. The 'imperative of judicial integrity' was referenced in *Elkins v. United States*, 364 U.S. 206, 222, 4 L. Ed. 2d 1669, 80 S. Ct. 1437 (1960), emphasizing that the courts must not become 'accomplices in the willful disobedience of a Constitution they are sworn to uphold.' 364 U.S. at 223. While this purpose has received less attention than deterrence in the more recent cases, it is surely pertinent here where the Fourth Amendment violation consisted of misrepresentations to a federal magistrate." 19 Kan. App. 2d at 540.

We disagree. As noted in the Court of Appeals opinion herein, the majority of courts do not, as a general rule, apply the exclusionary rule to probation revocation proceedings. 19 Kan. App. 2d at 537. Some courts apply an exception where the police officer making the illegal search knows the subject of the search is on probation. We believe the bare fact of such knowledge is an inappropriate basis for an exception to the general rule. In rural areas, most law enforcement officers would know who is and who is not a probationer. In urban areas, officers assigned to units involved in the investigation of specific types of crimes would be likely to know individuals who have previously been arrested by their units for these specialized crimes and that such individuals are on probation. Drug enforcement and vice departments are examples thereof. Further, such an exception would create illogical results. Let us assume an officer sees what he or she thinks may be an illegal drug sale occurring. The officer knows one of the individuals is on probation—the other party thereto is a stranger. Without probable cause, a search is made and evidence of the crime is seized. Both parties are, in fact, on probation. No logical purpose is served by admitting it in one party's probation revocation proceeding and excluding it in the other, based solely

on the officer's knowledge (or lack thereof) as to the individual's probationary status.

As to the "judicial integrity" justification for exclusion espoused by the Court of Appeals, we find it unpersuasive. If judicial integrity is a viable consideration herein, it is a further reason for not applying the exclusionary rule. Violation of the terms of probation is, in a sense, a violation of the court's trust. For example, look at the facts herein. Defendant pled guilty to 15 crimes on January 25, 1991, including multiple felonies, and was placed on probation. In September of the same year, defendant pled guilty to another felony and was, again, placed on probation. A little over a year later, the present violation occurred. It would appear that if judicial integrity is a valid consideration herein, the court's integrity is better served by permitting it to consider reliable evidence that a serious violation of a probationary term has occurred.

We conclude that, generally, the exclusionary rule should not apply to probation revocation proceedings. We do not recognize an exception thereto based solely on whether or not the officer involved in the illegal search and seizure knew of defendant's probationary status. We further conclude that there may be instances where the illegal acts of police officers, in the totality of the circumstances, are so egregious that the need for their deterrence outweighs the court's need for information.

One of the difficulties herein is that we do not have before us the affidavit for the search warrant or specifically what statements therein were deemed by the district attorney's office to be "false statements either deliberately made or made with reckless disregard for the truth." By virtue of the way this case developed, such information was not presented to the district court.

We, therefore, must remand the case to the district court to conduct an evidentiary hearing to consider the totality of the circumstances involved and to determine whether or not the unlawful police activity herein was so egregious as to warrant application of the exclusionary rule.

The judgment of the Court of Appeals reversing the district court is reversed. The judgment of the district court is reversed,

and the case is remanded for further proceedings consistent with this opinion.

ABBOTT, J., dissenting: I dissent from the last four paragraphs of the majority opinion. Society has paid a high price as a result of the exclusionary rule. I would not extend the exclusionary rule one iota beyond what is required by the United States Supreme Court. Suppression of evidence for violation of an accused's Fourth Amendment rights is not a constitutional requirement. It is a court-made rule. The United States Supreme Court has applied this rule to criminal prosecutions, not to probation revocation hearings.

Probation is an act of grace. The probationer is not required to accept probation. When the probationer chooses probation rather than prison the probationer accepts certain restrictions (some statutory and others imposed by the court) and agrees to abide by those restrictions. First and foremost, the probationer agrees to obey the law.

Here, the probationer had committed and pleaded guilty to eight burglaries, seven felony thefts, and one conspiracy to possess marijuana with intent to sell. Within 14 months of being placed on probation for conspiracy to possess marijuana with intent to sell, marijuana and cocaine were found in the probationer's home and he admitted to selling cocaine.

The parties have conceded the search warrant used in searching the probationer's home was invalid. This clearly makes the evidence seized excludable in determining guilt of a criminal offense in both state and federal criminal trials. Thus, the probationer cannot be convicted for the new offenses of possession of marijuana or cocaine or sale of cocaine. The invalid search warrant does not, and should not, exclude the evidence in a probation revocation hearing.

Trial courts look to the purpose of the exclusionary rule and balance the potential injury to society, such as the loss of ability to enforce probation requirements, against the potential benefits of applying the exclusionary rule to the probation system. In my opinion, the marginal increase in deterrence of law enforcement

officers' conduct would be slight while damage to the probation system would be great.

The majority would limit the exclusionary rule in probation revocation hearings to those cases where police conduct is "so egregious that its deterrence outweighs the court's need for information," a standard that I would suggest is vague but clearly intended to cover extraordinary, extreme, and flagrant conduct on the part of law enforcement officers. Clearly, it does not cover mistakes of fact, technical defects in warrants, and good faith efforts in obtaining warrants, etc. It appears to me that for conduct which meets the "egregious" threshold, which in turn "may" warrant an exception to the rule that illegally seized evidence from a probationer is not excluded from probation revocation proceedings, other effective deterrents are available. For instance, a law enforcement officer could be prosecuted for perjury or making a false oath when false information is knowingly given to obtain a search warrant; civil causes of action are available for extraordinary, extreme, and flagrant violations of Fourth Amendment rights; and departmental disciplinary proceedings are also available.

On the other side of the scale, to exclude reliable evidence of a violation of probation would deter society from rehabilitating the probationer and encourage the probationer to continue disobeying the law. The court services officers' time available to supervise and rehabilitate a probationer (time already at a premium and carefully rationed by necessity) would be decreased as it would be spent attempting to obtain admissible evidence.

To permit admission of the evidence is reasonably related to legitimate probation system interests. Law enforcement officers and probation officers know the evidence will be excluded in prosecution for crimes, so exclusion under the rule adopted by the majority would add only minimally to the exclusionary rule's deterrent effect on law enforcement officers' conduct. That minimal effect would be largely offset by the other remedies available to deter "egregious" conduct that meets the majority's standard.

I would adopt the majority opinion but delete the last four paragraphs of the opinion and the last sentence of the syllabus.