The appellant, David Niles Holley, was convicted of kidnapping in the first degree and was sentenced to 20 years' imprisonment. On this appeal of that conviction, he raises five issues.
 I
Jackie Staton testified that the appellant abducted her from her place of employment and forced her at gunpoint into a car. Ms. Staton said that she and the appellant wrestled over the gun and that she tried to escape from the car, but that the appellant "grabbed [her] hair with both hands," R. 46, and she "lost a lot of . . . hair in a hair barrette," R. 48.
The appellant claims that he is entitled to a new trial because the State lost a hair sample that had been removed from his automobile during a search of that vehicle after he was arrested and after the vehicle was impounded. Citing Gurley v.State, 639 So.2d 557 (Ala.Cr.App. 1993), he argues that the loss of the hair sample, which he says could have proved his innocence, rendered his trial fundamentally unfair.
This case is different from Gurley and from Ex parte Gingo,605 So.2d 1237 (Ala. 1992), cert. denied, ___ U.S. ___,113 S.Ct. 967, 122 L.Ed.2d 123 (1993), upon which Gurley relied, because in this case the State did not use or allude to the hair sample in its case-in-chief. In Gurley, the State presented oral testimony about a charred object alleged to have been the victim's wallet, which had been lost by the time of trial, to establish the theft component of a capital indictment. In Gingo, the prosecution used the results from tests conducted on allegedly hazardous waste materials, which had been destroyed by the time of trial, to establish a crucial element of the State's case. Both Gurley and Gingo involved the State's use, at trial, of evidence that was unavailable for examination or testing by the defense.
In this case, the hair sample was apparently lost before it could be subjected to forensic testing. It was not available to the defense, but it was also not available to or used by the State. The lost evidence in the appellant's trial is analogous to the missing evidence in Arizona v. Youngblood, 488 U.S. 51,109 S.Ct. 333, 102 L.Ed.2d 281 (1988).
In Youngblood, the police failed to preserve a sodomy victim's semen-stained clothing, but the State did not introduce any evidence pertaining to the clothing in its case-in-chief. The Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, the failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. at 58,109 S.Ct. at 337. The appellant's case falls squarely within the rule of Youngblood. *Page 52 
The appellant did not claim at trial and he does not claim on appeal that the State's loss of the hair sample was the result of bad faith. Therefore, the trial court did not err by failing to order an investigation into the disappearance of the evidence. See Youngblood, supra. Furthermore, even if it had been determined that the hair sample did not match Ms. Staton's hair, that fact would not have precluded the appellant's guilt as Ms. Staton's kidnapper. The appellant was not entitled to a new trial on this ground.
 II
The appellant argues that the trial court erroneously prevented him from fully exercising his right to cross-examine State's witness Jackie Staton.
Ms. Staton, who was 26 years old at the time of trial, testified that prior to the incident for which the appellant was charged, she did not know the appellant. In contrast, the appellant, who was also 26 years old, testified that he had known Ms. Staton since the two of them were children.
The appellant presented testimony from three of his family members that Ms. Staton's grandmother had babysat for the appellant, his two brothers, and his two sisters, along with Ms. Staton and her two stepbrothers, when the appellant and Ms. Staton were 8 or 9 years old. The appellant's family members testified that because all of the children played together, they felt sure that Ms. Staton knew the appellant.
Ms. Staton testified that she knew that her grandmother had babysat for the Holley children and she admitted that she recognized the appellant's brother Paul, but she insisted that she did not recall the appellant. The court sustained the prosecutor's objections to the following questions, addressed to Ms. Staton by defense counsel:
 "[H]ave they [Ms. Staton's stepbrothers] been involved in cases in this court?" R. 55-56.
 "And your stepbrothers . . . weren't they arrested and weren't they prosecuted for . . .?" R. 57-58.
When defense counsel asked Ms. Staton, "[A]re you going to tell the court that there's no feelings about [the appellant] that have something to do with [the appellant's] involvement with your stepbrothers?" (R. 73), the court instructed the defense to "discuss this out of the presence of the jury." R. 73.
Defense counsel was then given the opportunity to make an offer of proof demonstrating that the appellant's involvement with the witness's stepbrothers was relevant. The appellant's counsel offered to prove that Ms. Staton had gone to Draper Correctional Facility to visit one of her brothers who was incarcerated there at the same time that the appellant's family went to Draper to visit the appellant's brother, and that the two inmates were brought out together. The following then occurred, out of the presence of the jury:
 "THE COURT: How does that relate to whether or not she knows this Defendant? [Defense counsel], give me one thread of evidence of the fact that [Ms. Staton] saw [the appellant's] brother in prison would give any inference that she knows [the appellant].
 "[Defense counsel]: Your Honor, an accumulation of circumstantial evidence. We can't get her to admit that [she knows the appellant]. She's already denied that. It's impeachment and cross-examination and we are prepared to show —
 "THE COURT: I'm willing to let you ask if she saw [the appellant's] brother in prison or something like that if I think it's relevant. If it's not relevant, why should I let you ask it?
 "[Defense counsel]: It's relevant, circumstantially to show [that] she knew the family like they say she does and she's bound to know this man here [the appellant].
 "[Assistant district attorney]: Judge, he asked her everything up until the point about seeing the brother in prison and she has answered that. He's not been limited in that regard. The only thing that we objected to on the question was trying to implicate her family as being co-conspirators to his family when it had nothing to do with . . . [the] identification of this Defendant. *Page 53 
 "[Defense counsel]: We are not making anything about co-conspiracy. We are not getting into who's in prison for what. That's not the point. That's not the point at all.
". . . .
 "THE COURT: [Defense counsel], . . . whether or not she knows him or whether she's ever been in the room with him may be relevant. Whether or not her brother and his brother did something criminally together is totally immaterial.
 "[Defense counsel]: If they were brought up [at Draper prison] together.
 "THE COURT: Not unless she was there and she saw them." R. 78-80.
The trial court did not err in limiting defense counsel's cross-examination of Ms. Staton in this regard. The fact that Ms. Staton's brother and the appellant's brother were incarcerated together, or even that they were connected with the same crime, was immaterial. The appellant failed even to show that Ms. Staton and the appellant were in each other's presence during the incident at Draper prison, much less that Ms. Staton recognized the appellant, knew that he was related to an inmate with whom her brother was incarcerated and harbored some bias or ill will toward the appellant growing out of the family connection.
The general rule is that a witness may not be impeached on a collateral matter. 3A Wigmore, Evidence § 1003 (Chadbourn rev. 1970); C. Gamble, McElroy's Alabama Evidence § 156.01(1) (4th ed. 1991).
 "To affect the general credit of the witness the contradictory statements must relate to matter which is material to the issue on trial and not to those incidental or collateral facts which are remote in their application to the offense on trial and which would improperly extend the issues or involve the trial of other offenses which have no legitimate bearing on the particular offense under investigation.
 "But there is an exception to this rule, that if it has relation to the credibility of the witness in the particular case it is admissible, although it be in respect to collateral or immaterial matter."
Noble v. State, 253 Ala. 519, 521-22, 45 So.2d 857, 859 (1950) (emphasis in original) (citations omitted). Ms. Staton's credibility would have been affected in this case only if it were shown that she was biased against the appellant because of his brother's criminal connection with her brother. CompareBrundage v. State, 585 So.2d 238, 240 (Ala.Cr.App. 1991) (had accused, who was charged with assault of a store security guard, offered to prove store guard/witness's use of racial epithets toward other black customers, evidence would have been admissible to prove racial bias against accused, who was black).
 III
The appellant contends that the judgment of conviction is invalid because the jury verdict was not entered into the court record. He bases that contention on the following incomplete entry in the case action summary dated February 6, 1993:
 "Comes the District Attorney, Defendant and his counsel and this cause being set for trial, comes a jury of John M. Hollis, Jr., and eleven others, who being impanelled and sworn according to law, upon their oaths do say: 'We, the Jury, find the Defendant __________.' H.E. McFerrin, Judge." C.R. 3.
Immediately after the foregoing entry, the following appears:
 "It is the judgment of the law that the defendant is guilty (as charged). H.E. McFerrin, Judge." C.R. 3.
Both of these entries appear to have been pre-printed on the case action summary, with blanks for the entry of the appropriate information and signature and a space for the insertion of the date.
The trial transcript reflects that the jury returned the following verdict, "We, the jury, find the Defendant, David Niles Holley, guilty of the offense of kidnapping in the first degree as charged in the indictment. John M. Hollis, Jr., Foreperson." R. 211. Immediately following the verdict, the trial judge stated, "Mr. Holley, you have heard the jury verdict in this case. Now that the jury has returned the verdict finding you guilty of kidnapping in the first degree it is my duty *Page 54 
to pronounce judgment against you and declare that you are adjudged guilty of the offense of kidnapping in the first degree." R. 212.
Because the trial court clearly adjudged the appellant guilty in accordance with the jury verdict and entered that judgment on the case action summary sheet, the material requirements of Rule 26.9(c), A.R.Crim.P., pertaining to the entry of judgments, were met. Cf. Royer v. State, 542 So.2d 1301,1305-06 (Ala.Cr.App. 1988) (where a UTTC contained a writing signed by the judge setting forth the defendant's plea, the verdict of guilt, and the pronouncement of sentence, the material requirements of Rule 8(a), A.R.Crim.P.Temp. (now covered by Rule 26.9, A.R.Crim.P.), were satisfied, notwithstanding the court's failure to fill in the blank on the UTTC provided for the verdict). We will not elevate form over substance by concluding that the jury verdict was not "entered into the court record" because of the oversight of failing to fill in the blank on the preprinted case action summary sheet form. See Duncan v. State, 587 So.2d 1260, 1264 n. 1 (Ala.Cr.App. 1991).
 IV
The appellant contends that his sentence was invalid because he did not receive or waive his right to the mandatory sentence hearing required by Rule 26.6(b)(1), A.R.Crim.P. That rule provides:
 "Unless the court has no discretion as to the penalty to be imposed and no power to suspend execution of the sentence, the court shall conduct a sentence hearing in all felony cases, unless waived by the parties with the consent of the court. The sentence hearing may commence immediately after a determination of guilt or may be continued to a later date to be set by the court. If a presentence report is required, the sentence hearing shall not be conducted until copies thereof have been made available or furnished to the court and the parties."
Immediately after the trial court pronounced the appellant guilty, the following occurred:
 "[THE COURT]: What do you have to say why the sentence of the law should not be pronounced upon you?
"Mr. Kettler [defense counsel]?
"MR. KETTLER: Nothing.
 "THE COURT: Mr. Nichols [assistant district attorney], do you have anything to say?
"MR. NICHOLS: No, sir.
 "THE COURT: Sentence of the law is that you be confined in the penitentiary of the State of Alabama for a term of twenty years. I'm going to require that you pay the court costs in this case and I'm going to also require — were you appointed, Mr. Kettler?
"MR. KETTLER: Yes, sir.
 "THE COURT: I'm going to also assess the attorney's fees against you in the case as I'm required to do.
 "I'm also going to assess a fifty dollar crime victim's compensation payment against you." R. 212-13.
Although mere acquiescence does not constitute a waiver of a sentence hearing, see Day v. State, 539 So.2d 410, 415
(Ala.Cr.App. 1988), any error in sentencing the appellant without first conducting a sentence hearing was harmless in this case because the appellant received the minimum sentence for a Class A felony committed with the use of a firearm. See Ala. Code 1975, § 13A-5-6(a)(4) (providing that the sentence "[f]or a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony [is to be] not less than 20 years").
 V
The appellant claims that the circuit court erred by denying his motion for a new trial on the ground that Jackie Staton gave false testimony.
At the hearing on his motion for a new trial, the appellant presented the testimony of a former law enforcement officer, James Malcolm Moore, who had previously been married to a relative of Jackie Staton's. Moore testified that Ms. Staton and the Holley siblings had played together as children *Page 55 
when they were cared for by Ms. Staton's grandmother.
Moore's testimony did not establish that Ms. Staton testifiedfalsely when she denied knowing the appellant. While it supported previously-adduced testimony that Ms. Staton had the opportunity to have known members of the appellant's family, it did not undermine Ms. Staton's testimony that she did not recall the appellant some 15 years after the alleged earlier contact.
The standard for granting a motion for a new trial on the ground of perjured testimony is set forth in Ex parte Frazier,562 So.2d 560, 569-70 (Ala. 1989):
 "In order to grant a motion for new trial alleging perjured testimony, the trial court must be reasonably well satisfied 1) that testimony given by a witness at trial was false; 2) that there is a significant chance that had the jury heard the truth, it would have reached a different verdict; 3) that the evidence tending to prove the witness's perjury has been discovered since the trial; and 4) that that evidence could not have been discovered before or during trial by the exercise of due diligence."
A trial court's ruling on a motion for a new trial on the ground of perjured testimony will be upheld unless clearly erroneous. Ex parte Frazier, 562 So.2d at 570. The court's ruling in this case was not clearly erroneous.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.