Salvador **BERNAL–ZAZUETA,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14598.**

United States Court of Appeals
Ninth Circuit.

April 19, 1955.

David C. Marcus, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, Richard L. Sullivan, Assts. Attys. Gen., Los Angeles, Cal., for appellee.

Before FEE and CHAMBERS, Circuit Judges, and SAMES, District Judge.

JAMES ALGER FEE, Circuit Judge.

The defendant was indicted in four counts for transporting aliens who were illegally within the United States and whom he had reason to believe had entered the country within three years.[1] The trial was before a jury. Defendant was convicted upon one count. The United States thereupon dismissed two counts and an independent indictment for similar offenses. Appeal was taken from the judgment of conviction. The serious

1. 8 U.S.C.A. § 1324: "Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—
* * * knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law * * * any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony, * * *."

assignments of error relate to the question of whether there was a fair trial.

There was a hypercritical criticism of the language of the indictment, but we find that fair notice was thereby given to defendant of the crime of which he was charged. The evidence showed that defendant, who was proved to have been previously convicted of a like offense, was arrested while driving an automobile upon the public highway at 11:00 p. m. on May 23, 1954, near Bakersfield, with four Mexican aliens in the body of the car with him and another in the trunk. It was proved that two of these passengers had crossed the border together but a short time previously. Defendant, who was prohibited from approaching the Mexican border under the terms of a probation order, picked up these aliens, none of whom he had known before, at Lomita, California.

Since none of the aliens who were being transported spoke English, when certain of these appeared on the witness stand the proceedings were conducted through an interpreter. Counsel complains of certain expressions of the judge, which were directed to him during the examination of these witnesses. The record shows a very difficult situation. Experienced lawyers know how a proceeding of this sort impresses foreigners on the witness stand, as they may be ignorant of the language and of the purpose of the trial. The conduct of counsel in examination led to rebuke by the judge.

It is claimed here that the court interfered with cross-examination, admonished counsel "to be very brief," threatened to stop cross-examination, stated to counsel on several occasions that he was not being fair, objected to questions of counsel for the defense, to which the United States Attorney did not see fit to object, and intimated that counsel had considerable experience in like matters. The passage as to this last is set out in the margin.[2] The contention here is that the trial judge indicated to the jury that the case should be decided against the defendant. Several California state cases are cited to the effect that the trial judge should never invade the province of the jury and should give them no intimation as to its opinion on the facts.

But this is not the rule in the federal courts, where the trial judge is not assumed to be an automaton, but is charged with responsibility to see that the trial is fair to the government as well as to the defendant and that it moves with speed consistent with justice. Furthermore, a trial judge, even in a criminal case, is not bound by the rule of some state courts, but is permitted to instruct the jury upon the facts and to comment upon the credibility of witnesses. It is notable that in the incidents complained of here the court did not pretend to be dealing with the guilt or innocence of defendant. The trial judge was apparently trying to protect a witness from what he, on the

2. "Q. And the Immigration Department took you out, didn't they?
"A. They took me to Mexico.
"Q. So you didn't go out voluntarily yourself, you went out in the custody of an immigration officer, didn't you?
"The Court: Well now, Mr. Marcus, you know very well that in many of these cases the immigration authorities permit a voluntary departure after they have arrested the alien. It isn't fair to ask him that question.
"Mr. Marcus: Your Honor, the voluntary departure——
"The Court: I don't wish any argument. You have too many of these matters and you know too much about it. I don't care to have any argument. If the Government doesn't object, I will. It isn't fair to the witness.
"Mr. Marcus: Would your Honor permit me to please——
"The Court: No. You put another question to him.
"Q. By Mr. Marcus: Were you ever deported from the United States?
"Mr. Sullivan: That is calling for a conclusion of law, your Honor.
"The Court: He may answer if he knows.
"Read the question.
"(The question was read.)
"The witness: No."

ground and in the atmosphere of the trial, believed to be unfair and improper cross-examination. The witness was an alien, speaking another language, obviously unacquainted with the customs of the court. The witness was in custody. He was one of the aliens whom the evidence and admissions of defendant showed was being transported. On account of these factors, his testimony tends to appear confused and contradictory. The cross-examination is certainly proper and should not be interfered with. But the traditional role of the trial judge is to protect a witness. The fact that the witness has testified for the government does not free the court from this obligation. Further along in the proceeding, the trial judge apparently believed that the attorney for the defense was attempting to control the interpreter.

Perhaps, in a cumulative collocation of the expressions of the judge to counsel, the language may appear out of context to be somewhat unguarded. Counsel should not place himself unnecessarily in such a position that an appellate court must decide between him and the trial judge. The merits must be considered. It would not be proper to require a retrial of a case where the defendant is guilty, simply because the lawyer, even where misled by zeal for his client, has superinduced a reprimand. No exception was taken to the attitude of the trial judge and no motion for mistrial was made upon the basis of any of the incidents now complained of. This is not a case where a defendant is appearing in propria persona. Although, as pointed out above, in such remarks the court was not dealing with the facts of the alleged crime, the judge painstakingly instructed the jury to base their verdict only upon the evidence presented at the trial. They were emphatically told they could disregard any comments of the judge which might invade their province of fact finding.

After comprehensive instructions were given, to which no exceptions were taken, the jury began deliberation at 11:58 a. m.

August 27, 1954, and were excused from the courtroom at about 10:30 p. m. that evening after the bailiff had been instructed to make arrangements for their accommodations for the night. After several hours of deliberation upon August 28, 1954, the jury returned a verdict of guilty on one count and of not guilty on another similar count. The length of time taken by the jury is proof positive that the conduct of the trial theretofore had not affected their judgment.

After the jury had deliberated for some hours, they reported to the court an inability to agree. Thereafter, numerous colloquys between the court and the jury were held, and the jury was given instructions in answer to requests. No exceptions were taken by counsel for defendant to the giving of any of the later instructions or to the content thereof. Counsel now raises the contention that the verdict was coerced by the judge. Reading the transcript indicates to our minds that the trial judge believed, after the long period of deliberation, that the jury would finally acquit completely and gave them every opportunity to do so if that were what they determined. Counsel for defendant seems to have acquiesced in this theory at the time. Particularly, however, the question is now raised as to whether or not the verdict, which was only on one count, is inconsistent. Although counsel took no exception relating to this claim, one of the jurors asked about this matter. The questions of the jurors and the responses of the court are as follows:

"Juror Purman: May I ask, would it be—taking all the facts into consideration, the particular facts in these two indictments against this defendant—would it be consistent, your Honor, to find him guilty on one count and not on two?

"The Court: Well, that is entirely up to the jury. There is no requirement that a jury's verdict be consistent.

"Juror Purman: That answers the question.

"The Court: The courts have repeatedly said that a jury may, if it chooses, return an inconsistent verdict. And that has happened in cases.

"Now, is there anything further?"

The Court has examined the record and finds that there was basis in the evidence for the return of a verdict of guilty as to one of the aliens and as not guilty as to the other. It was a question for the jury. The specific difference was that the defendant might have very well known more about the antecedent entry of one of these aliens than he did about the entry of the other. Again, no exception was taken. Apparently, counsel and defendant were as little anxious to retry the case as was the government.

 This Court is of opinion that the long conversations between the judge and the jurors might better have not been held.[3] We are fully aware that it is to the interest of all parties not to have a case retried if it can be settled the first time. These protracted parleys held Friday afternoon and late Friday night indicate that the judge felt the strain of a crowded week of judicial business. If the case had stood on the original instructions, there would have been no ground for the contention which is now made. The discussions later were informal, and, while technical exactness may have been sacrificed in definitions in colloquial language, the expressions of the judge were fair and impartial.

We have reviewed the whole record and find no error. The apparent acquiescence of counsel in the course taken by virtue of his failure to move for a mistrial or to take any exceptions is conclusive under these circumstances.

The chief question in this case is whether the defendant was justly convicted. We have found there was no technical error. The evidence of guilt was overwhelming. While the jury might

have exercised its prerogative and acquitted on all counts instead of one, justice would not have then been done. The defendant to all intents and purposes admitted his guilt on the stand. The admissions which he made to the jury were damning. The record showed that he had previously been convicted of a like offense and was then on probation from the same court. The circumstances of his arrest with four aliens in the car and a fifth in the trunk and his admissions on the spot to the police officer were highly dramatic and convincing. It cannot therefore be held that he was prejudiced by any of the incidents of the trial or the recorded questions of jurors and responses of the judge.

Affirmed.

---

3. In justification, it may be said this was the practice of the better English judges. The power of comment and direction on the facts should be preserved to the trial judges of the federal system. In this instance, however, the judge was not dealing with the facts, but the law.