121 So.2d 875

**Sam A. FIORELLA**

v.

**STATE.**

6 Div. 730.

Court of Appeals of Alabama.

Feb. 2, 1960.

Rehearing Denied Feb. 23, 1960.

**588**

Gibson & Hewitt, C. E. Huey and M. C. Zanaty, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

CATES, Judge.

■ This is an appeal from an order below reading partially:

"And on this the 16th day of April, 1959, the Court having heard the testimony in this case, and upon it being shown to the Court that the defendant has violated the terms of his probation, it is ordered by the Court that said probation be and the same is hereby revoked and his sentence put into effect." [1]

Fiorella had been charged and convicted of a lottery law violation for which he was sentenced to twelve months hard labor. September 25, 1958, the trial judge, upon consideration of Fiorella's application and of the probation officer's report thereon, ordered the execution of sentence suspended

---

1. Review is also sought by petition for mandamus; we have considered an order revoking probation is appealable.

Sparks v. State, ante, p. 551, 119 So.2d 596.

for five years "pending the good behavior of the defendant." [2]

April 8, 1959, upon a showing of probable probation violation, the trial judge ordered Fiorella's arrest and set Fiorella's hearing as to revocation or not for April 16, 1959. After hearing testimony, the judge made the revocation order set out at the beginning.

Under the evidence, the trial judge could have properly inferred that Fiorella had, on March 15–16, 1959, frequented the "Old McCoy Place" in Shelby County at a time when gambling was going on there. Also, one witness stated Fiorella took a drink of whiskey: Shelby is a dry county.

The assignments of error brought forward in brief are stated to involve the following:

"A. Did the trial Court grossly abuse his discretion by overruling the various motions of the appellant?

"B. Did the appellant have a legal hearing within contemplation of the law, when it is apparent that the trial Court had a predetermined or fixed opinion as to the trial Court's decision to revoke appellant's probation prior to hearing all of the evidence in the case?

"C. Did the trial Court commit a gross abuse of discretion in revoking appellant's probation?

"D. Were the appellant's constitutional rights violated?"

At the outset of the transcript of evidence, we find Fiorella's counsel making a motion that the hearing be postponed pending the outcome of the case made against him in Shelby County on account of the raid of the night of March 15–16, 1959.

It was argued there (and here) that to deny this motion would be to put Fiorella in a position where, if he defended himself in the probation hearing (presumably taking the stand in his own behalf), he might give incriminating testimony against himself which could be used in his Shelby County trial.

The court properly denied continuance. Fiorella's argument ignores that he was under no compulsion to testify in either proceeding.

As to a probationer's status, it occurs to us that he has, by seeking mercy, imposed upon himself the highest duty in good faith to behave himself so as to merit the confidence which the trial judge has put in him. Therefore, when formally accused and confronted with a prima facie showing of dereliction of that duty, if he chooses to be silent, we think that the failure to testify undoubtedly may be considered by the judge.[3]

Another motion was made requesting a postponement because newly employed counsel for Fiorella came to the conclusion that the solicitor, contrary to their expectations, was relying entirely upon what happened in Shelby County, and that, due to insufficient time for preparation, he had not had time to investigate that matter adequately in order to defend Fiorella. The fact that counsel came into the case at a late date, of course, is something over which they had no control; but Fiorella did. A probationer arrested on a gambling raid on the 16th of March, who is picked up on a probation revocation warrant on April 8, has, in the absence of some clear and convincing excuse, had adequate time to prepare himself for a hearing held April 16.

2. However, Fiorella is in no position to complain. Code 1940, T. 42, § 23, requires the probation officer to furnish the probationer with a written statement of the conditions of his probation. There is nothing in the record even hinting Fiorella did not know of the conditions of his probation.

3. The degree of proof is not that of a criminal case: rather only such substantial evidence as would reasonably satisfy the trier of fact of a condition breached. See Williams v. State, ante, p. 139, 109 So.2d 145; Murphy v. Lawhon, 213 Miss. 513, 57 So.2d 154; State v. Robinson, 248 N.C. 282, 103 S.E.2d 376; Manning v. United States, 5 Cir., 161 F.2d 827.

■ What we have said above adequately covers Fiorella's motion to exclude the State's evidence. We consider that the proof was sufficient for a reasonable mind to have been satisfied of Fiorella's presence in a gambling establishment, a clear cut breach of a condition of his probation.[4]

■ Fiorella also moved that the court keep the matter under advisement (without public decision) until after Fiorella's trial in Shelby County, since publicity might prejudice jurors in that county against Fiorella.

■ We consider that the problem of possible prejudice in the Shelby County trial would be one addressed to the circuit judge trying Fiorella in that county, rather than good ground to delay a probation revocation hearing in Jefferson County. There is no double jeopardy:

"A probationer who commits criminal acts is liable for the consequences of such acts both by indictment and conviction for the crime, and by having his probation revoked. The two are not mutually exclusive nor does one bar the other. * * *" United States ex rel. MacLaren v. Denno, D.C., 173 F.Supp. 237, 241.

■ The next major contention was that the judge predetermined Fiorella's guilt before hearing all the evidence, and accordingly that Fiorella did not have a fair hearing as required by Code 1940, T. 42, § 24.

In McCain v. Sheppard, 33 Ala.App. 431, 34 So.2d 225, it is pointed out that a revocation hearing is mandatory and jurisdictional to an order revoking probation.

■ A hearing ordinarily is defined, in matters not associated with full trials, as a proceeding in which the parties are afforded an opportunity to adduce proof and to argue (in person or by counsel) as to

the inferences flowing from the evidence. We have reviewed the entire record here and we are at the conclusion that the trial judge afforded Fiorella this opportunity.

We have reviewed under the standard prevailing in civil causes. See discussion in Bernal-Zazueta v. United States, 9 Cir., 225 F.2d 60, at page 68, headnotes 6–9. Thus, in Williams v. State, supra, we noted the onus on the State was not that borne in criminal cases. Also see footnote 3 above. From the Note, Legal Aspects of Probation Revocation, 59 Col.L.Rev. 311, we quote (p. 332), omitting footnotes:

"E. *Standards of Proof and Rules of Evidence*

"While the state clearly bears the burden of proving violation of a condition, no probation statute specifies. the degree of proof necessary to meet. this burden. Courts have differed as. to what the standard should be, although proof beyond a reasonable doubt. is generally not required. The most common judicial formulation requires. evidence which reasonably satisfies the judge.

"It is fairly well established that the rules of evidence applicable to criminal trials need not be strictly followed in revocation hearings, and at least one state has so provided by statute. Some indication exists, however, that a revocation is improper if based solely on evidence inadmissible at a criminal trial."

See also R. v. Pine, (1932) 24 Cr.App.R. 10—breach of recognizance.

Upon ruling on the first motion of continuance at the beginning of the hearing, the trial court made certain remarks, which Fiorella claims showed the judge had prejudged him, viz.:

"The Court: Mr. Gibson, I am going to overrule your motion, because I

---

4. Fiorella makes no contention that he was not apprised of the conditions of his probation. Cf. Manning v. United States, supra, note 2.

think his record—Sam's record speaks for itself, and I think I have already bared my breast to Sam and have done everything I could to help Sam in this case, and give him probation when he was not entitled to it, and did it for one reason, and that is to keep him from being deprived of due process of law.

"This warrant was issued with the knowledge that he hadn't been tried down there, but with the knowledge that that case might be put off from time to time and not be tried for several months. So, I don't believe the Court would be justified in passing the case for the reasons stated, and I will overrule."

In addition to the statement that Fiorella was given probation, to prevent him from being deprived of due process of law, the record shows that on the original criminal proceeding in Jefferson County Fiorella was prevented from presenting to this court on his appeal here (6 Div. 545, November 19, 1957, no opinion) a transcript of the evidence because, pending notice of appeal and perfection of record below, the court reporter died and another reporter was unable to read the notes.

Fiorella contends that apparently it was bootless for his counsel to argue at the hearing's close, because the judge indicated, at the outset of the delivery of his opinion, that he had spoken to Mr. Deason, the deputy solicitor, and Mr. Grant, the probation officer, beforehand with respect to the problem of whether or not Fiorella's merely being charged with a crime in Shelby County was (before conviction) sufficient to justify the Jefferson County probation revocation proceeding.

Fiorella's counsel, in all fairness, says, "It is not clear from the record what the court previously said to Mr. Deason and Mr. Grant." Accordingly, we will not presume any sinister motivation nor discussion improper because not in Fiorella's presence. We think the presence of Mr. Deason and Mr. Grant with the trial judge can be readily explained by the necessarily ex parte proceedings which led to the issuance of the show-cause order initiating the revocation hearing. The probation officer and the deputy solicitor were under a duty to bring the matter, even though originating in hearsay, to the attention of the judge to begin a proceeding such as this.

The most insistent argument pressed upon us, both in brief and upon our hearing of this appeal, arises from the fact that the trial judge, after making an oral statement, proceeded to read from a prepared written statement. It is argued that the afternoon session commenced at 1:32, P.M., and thereafter testimony was taken, and the record fails to show any recess from then until the end of the hearing. Hence, "the Court could not have known at the time of the preparation of the written statement that all the evidence was before the Court."

We cannot ascribe prejudgment to merely being prepared. For aught we know, the tendencies of the evidence before the noon recess were such that the trial judge felt justified in having the prepared reasons for decision ready. The State's evidence presented after the noon recess was virtually all cumulative.

■ Accordingly, we think it highly proper for a judge, in circumstances such as those here, to set forth his reasons for decision. These statements neither add to nor subtract from the validity of the formal order, but they do serve a very useful purpose in educating the public in the workings of the probation system. The confidence of the public in that system is an important element in the administration of criminal justice.

Suffice it to say, the trial judge had it within his power until the very last moment[5] to continue Fiorella on probation or

---

5. The prisoner is with the court until he is taken off for service of his sentence. Smith v. Pelham, 252 Ala. 415, 41 So.2d 570; Davis v. Hardwick, ante, p. 164, 110 So.2d 302.

send him to the limbo of reprobation. We cannot think that the law commands that a trial judge reflect upon the evidence with a blank mind and suddenly at the end of the hearing come up with the decision of a Solomon. Rather he must bring his full attention to the evidence before him, weigh it brick by brick, and build the structure as the case goes along, and if, during the process, a judgment begins to form embryonically, we cannot say that this is an indication of bias or partiality. The law requires that he come to the case indifferent between the parties, prepared to decide solely upon the evidence. This court has heretofore indicated that it will not attempt to probe the mental processes of trial judges, but will only go upon the outward manifestations. Chesser v. Cotton Tractor Co., ante, p. 275, 111 So.2d 391.

■ Moreover, the mere fact that the court was prompt in deciding cannot be considered an element of bias and prejudice. We recommend the opinion of the late Judge Frank, in In re J. P. Linahan, 2 Cir., 138 F.2d 650, 651, wherein he wrote in part:

"* * * If * * * 'bias' and 'partiality' be defined to mean the total absence of preconceptions in the mind of the judge, then no one has ever had a fair trial and no one ever will. The human mind, even at infancy, is no blank piece of paper. We are born with predispositions; and the process of education, formal and informal, creates attitudes in all men which affect them in judging situations, attitudes which precede reasoning in particular instances and which, therefore, by definition, are pre-judices. Without acquired 'slants,' preconceptions, life could not go on. Every habit constitutes a pre-judgment; were those pre-judgments which we call habits absent in any person, were he obliged to treat every event as an unprecedented crisis presenting a wholly new problem he would go mad. * * *"

The foregoing contentions have been cumulated by counsel to claim (a) that the court committed a gross abuse of discretion in this revocation, and (b) that Fiorella's constitutional rights were violated. This last contention as to constitutional rights we do not think necessary to decide. We seriously doubt that Amendment XXXVIII confers any rights upon the person placed on probation. His only rights are those afforded by statute, except that his probation application must be passed on (if at all) by a court of "criminal jurisdiction." Constitution 1901, Amendment XXXVIII. Of course, his statutory right should be as valuable as one conferred by a more permanent form of enactment, and were there any question of due process of law involved here, it is our conclusion that the proceeding would have comported with the requirements of law.

■ Certainly, when the amendment to the Constitution (No. XXXVIII) confers upon the Legislature authority to empower the courts of criminal jurisdiction to suspend sentence, it is contemplated that the courts will not operate in a kangaroo fashion, but will arrive at their decisions in accordance with the best tradition of common law, which means, of course, that the defendant is entitled to all of those elements of consideration which we lump under the expression "fair play."

■ As the Supreme Court of Colorado in Logan v. People for Use of Almosa County, 138 Colo. 304, 332 P.2d 897, 899, said, the exercise of a trial judge's discretion in probation involves the consideration of the problem from three aspects, i. e., (1) the community, (2) the offense, and (3) the offender, "in that order." The court goes on to say:

"We live in an ordered society. He who may upset the good order and peace of the community, who may not adjust to society, who reveals an established behavior pattern which furnishes strong evidence that he lacks a sense of moral obligation, who is anti-social, and who is likely to be uncooperative,

should not be loosed upon the public. From the standpoint of the community, he would make an unworthy risk.

"The crime committed viewed in its setting; the nature and circumstances of the offense, particularly as they furnish a clue to the personality of the offender; whether the offense was violent or nonviolent; and the motives actuating the defendant in committing the offense, are components which the trial court will evaluate when considering the offense as a factor in the question of granting probation.

"Finally, the offender must be taken into account; 'the judge must know what sort of life the defendant has experienced, what his attitudes are, to what extent he is aware of his situation, and what meaning it has for him. When he examines the background of a defendant, as revealed in the probation officer's presentence investigation report, he looks for information corroborating or denying the defendant's will to reform and his ability to adjust himself to community life.' 'Guides for Sentencing,' by Advisory Council of Judges of the National Probation and Parole Association, page 35 (1957).

" * * * If he is worthy, his release on probation should not be weighted with terms and conditions having nothing to do with the purpose and policy of probation laws. If he is not a worthy risk, probation should be denied."

Of course, we are conscious of the difficulty of defining the expressions "judicial discretion" and "gross abuse of discretion." Since, on appellate review, the atmosphere of the trial below often can only be grasped by consideration of the entire record—from its four corners—we say merely that we have carefully considered it and conclude that Fiorella had a fair hearing after notice.

 Accordingly, the judgment below is due to be affirmed. We also deny the petition for mandamus. Van v. Parker, 266 Ala. 190, 94 So.2d 752.

Affirmed. Writ denied.

