WELCH, Judge.
 

 On September 27, 2004, Richard Val-landingham pleaded guilty to two counts of robbery in the first degree. He was sentenced to 15 years’ imprisonment; that sentence was split, and he was ordered to serve three years in prison followed by probation.
 

 On March 2, 2007, while Vallandingham was serving the probationary portion of his sentence, his probation officer filed a delinquency report. Although the report is not a part of the record, it appears that the alleged probation violation was that Val-landingham had committed the new offense of theft. On March 29, 2007, Val-landingham was brought before the trial court for an initial appearance under Rule 27.5(a), Ala. R.Crim. P. At the initial hearing, the following discussion occurred:
 

 
 *570
 
 “THE COURT: Okay. Mr. Valland-ingham, how are you?
 

 “THE DEFENDANT: Pretty good.
 

 “THE COURT: All right. Well, I’ve got you here this morning to give you notice of some alleged probation violations. If you admit them, if you say, yeah, that’s true, I’ve got to decide if I’m going to revoke your probation or not revoke it. If it is not true, all you need to do is say I deny the alleged violations and I will appoint a lawyer to represent you and we’ll have a hearing at a later date.
 

 “The alleged violation is that you have a new offense of theft of property in the second degree. Does he have anything else, Marcus?
 

 “MR. SIMMONS [probation officer]: No, ma’am.
 

 “THE COURT: All right. So I need to find out does he want me to keep him in delinquent status?
 

 “MR. SCHOETTKER [attorney for Vallandingham]: Judge, he’s denying the theft of property second. Let me ask you something. What happened to this domestic?
 

 “THE DEFENDANT: That one was the first time with my girlfriend that— you do admit that that was not—
 

 “MR. SCHOETTKER: Mr. Valland-ingham, I just want to know what happened in that case, the domestic violence case.
 

 “THE DEFENDANT: Oh, my girlfriend called the police and told them—
 

 “MR. SCHOETTKER: But what happened to it? Has it been dismissed? Did—
 

 “THE DEFENDANT: Oh, that was dismissed. Yes, I got — it was a misdemeanor. I went to class and they threw it out.
 

 “MR. SCHOETTKER: Okay.
 

 “THE COURT: What about the theft? You’re denying this?
 

 “THE DEFENDANT: Yes, ma’am. That was — I’m assuming was my mother called and said that I had took something from the house. But if we could— if we could even get in touch with her, she would admit that that was — the stuff was mine and—
 

 “THE COURT: Well, I mean, like I said, you’re innocent until you plead guilty or you’re found guilty by a jury. Yes, Marcus?
 

 “MR. SIMMONS: Judge, I actually just received a letter from his mom, and she was very upset about this situation. And she still says that the merchandise belonged to her other son and that he took it. She’s having a lot of problems with him. She said he’s back using drugs. And I just received the letter two days ago.
 

 “THE COURT: How long have you been locked up, Mr. Vallandingham?
 

 “THE DEFENDANT: It’s been right at a month and two days.
 

 “THE COURT: Were you back to smoking crack, man?
 

 “THE DEFENDANT: No. No, ma’am.
 

 “THE COURT: Yeah, uh-huh.
 

 “THE DEFENDANT: I did—
 

 “THE COURT: What, Mr. Valland-ingham?
 

 “THE DEFENDANT: A long story short—
 

 “THE COURT: You didn’t what? You weren’t using any drugs?
 

 “THE DEFENDANT: No. Yes, ma’am, I was. I did.
 

 “THE COURT: Of course, you were. What were you using, man?
 

 “THE DEFENDANT: I smoked crack.
 

 
 *571
 
 “THE COURT: You smoked crack. Thank you. Didn’t I just ask you that?
 

 “THE DEFENDANT: Yes, ma’am.”
 

 (R. 2-5.) After further exchange, the trial court stated that it was revoking Valland-ingham’s probation on the ground that he admitted that he had been smoking crack, which is a violation of his probation. Following revocation of his probation, Val-landingham requested the trial court appoint an attorney to file an appeal. The trial court appointed appellate counsel for Vallandingham. This appeal followed.
 

 On appeal, Vallandingham contends that the trial court erred in revoking his probation without affording him a probation-revocation hearing. Specifically, he argues that the proceeding on March 29, 2007, at which no testimony or evidence was presented, was not sufficient to constitute a probation-revocation hearing as required by § 15-22-54, Ala.Code 1975, and that the trial court failed to comply with the requirements of Rule 27.5 and Rule 27.6, Ala. R.Crim. P. We agree.
 

 The Alabama Supreme Court recently addressed a similar issue in
 
 Ex parte Anderson,
 
 999 So.2d 575, 577-79 (Ala. 2008):
 

 “A probationer who makes his initial appearance under Rule 27.5, Ala. R.Crim. P., is entitled to a revocation hearing. Rule 27.5(a)(4), Ala. R.Crim. P. (at the initial appearance, the ‘judge ... shall ... set the date of the revocation hearing’). At the revocation hearing, the probationer is entitled to be represented by counsel.
 
 See
 
 Rule 27.6(b), Ala. R.Crim. P. (‘[Probationer is entitled ... to be represented by counsel.’). The probationer may waive his right to a revocation hearing if he is given ‘sufficient prior notice of the charges and sufficient notice of the evidence to be relied upon’ and if he ‘admits, under the requirements of Rule 27.6(c), that he committed the alleged violation.’ Rule 27.5(b), Ala. R.Crim. P.
 

 “In the present case, it appears that the judge determined that Anderson had waived his right to a revocation hearing and his right to counsel, because she revoked his probation during his initial appearance without affording him representation by counsel. The trial judge initially informed Anderson that ‘[i]f what I read to you is not true, all you need to do is say “I deny the alleged violations.” I will appoint a lawyer to represent you, and we’ll have a hearing at a later date.’ After the judge read the violations, Anderson responded, ‘I’m denying the firearm charge and the other charges.’ However, he later during the initial hearing admitted that he had not reported to his probation officer because he did not have any money and could not pay his supervision fees or court-ordered moneys. Anderson also admitted during this initial appearance that although he was ‘denying the firearm charge and the other charges,’ he had pleaded guilty to those charges and had completed his sentence related to those charges. At no time during the appearance did Anderson request an attorney; however, neither did the trial judge, before revoking Anderson’s probation, ask him if he was willing to waive his right to a revocation hearing or to counsel. Nevertheless, based on Anderson’s admission that he had knowingly failed to report to his probation officer and that he had pleaded guilty to the other charges, the trial judge revoked Anderson’s probation without counsel present.
 

 [[Image here]]
 

 “ ‘[The Court of Criminal Appeals] has recognized, in probation revocation proceedings, only two exceptions to the general rule that issues not pre
 
 *572
 
 sented to the trial court are waived on appeal: (1) the requirement that there be an adequate written order of revocation ..., and (2) the requirement that a revocation hearing actually be held.’
 

 “[Puckett v. State,
 
 680 So.2d 980, 983 (Ala.Crim.App.1996) ] ....
 

 [[Image here]]
 

 “During the exchange between the trial judge and Anderson at his initial appearance, the trial judge told Anderson that if he denied the charges he would be afforded counsel and a subsequent hearing would be held; however, when he denied the charges, he was not afforded counsel and a revocation hearing for a later date was not set.
 

 “ ‘A hearing ordinarily is defined, in matters not associated with full trials, as a proceeding in which the parties are afforded an opportunity to adduce proof and to argue (in person or by counsel) as to the inferences flowing from the evidence.’ Fio
 
 rella v. State,
 
 40 Ala.App. 587, 590, 121 So.2d 875, 878 (1960). We agree with Judge Welch’s dissent from the Court of Criminal Appeals’ unpublished memorandum in this case. He stated that ‘[i]n this case no hearing was held. Instead, Anderson was subjected to an interrogation by the trial court with no meaningful opportunity to present any evidence.’
 
 Anderson [v. State],
 
 999 So.2d [573] at 575 [ (Ala.Crim.App. 2007) ] (Welch, J., dissenting).
 

 “Anderson has set forth facts indicating that a revocation hearing was not held and that Anderson did not waive a revocation hearing. Because the failure to hold a revocation hearing is one of the exceptions to the general rule requiring a defendant to preserve his arguments for appeal by first raising them in the trial court, the Court of Criminal Appeals’ decision is in error.”
 

 Like the Supreme Court in
 
 Anderson,
 
 we cannot say here that the proceeding on March 29, 2007, constituted a probation-revocation hearing. That proceeding did not include testimony or the taking of any evidence and did not afford Vallandingham an opportunity to be heard. In addition, there is no indication in the record that Vallandingham waived his right to a hearing. Therefore, we must conclude that Vallandingham was denied his right to a probation-revocation hearing at which he could confront and cross-examine adverse witnesses. Accordingly, we reverse the trial court’s revocation of Vallandingham’s probation and remand this cause for the trial court to conduct a probation-revocation hearing in accordance with § 15-22-54, Ala.Code 1975, and Rule 27.6, Ala. R.Crim. P.
 

 Based on the foregoing, the judgment of the trial court is reversed, and this cause remanded for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 BASCHAB, P.J., and MeMILLAN, SHAW, and WISE, JJ., concur.