MAIN, Judge.
Fredrick Darnell Banks was convicted of first-degree robbery, a violation of § 13A-8^11(a)(l), Ala.Code 1975. The trial court sentenced Banks to life imprisonment. This appeal followed.
Patty Thompkins, an employee of a Winn-Dixie grocery store in Mobile County, testified that on January 23, 2008, she was working at the store and noticed a black male, later identified as Banks, wearing dark clothing enter the store at approximately 11:30 p.m. Thompkins stated that she felt uneasy about the male. He walked around the store with one item, a bag of dog food, in his buggy and continuously talked on his cellular telephone. When he approached Thompkins’s checkout register, he no longer had the dog food in his buggy. Instead, he held a soft drink and continued to talk on his telephone. Thompkins asked him for his Winn-Dixie reward card. He provided Thompkins with a phone number instead, which Thompkins used to access his card. While she was ringing up his soda purchase, Thompkins noticed his earrings which were “praying hands.” After the sale, he remained in the store, standing between the register and the front door.
Meanwhile, another customer, later identified as Dustin Alston, entered the store and stood in line at Thompkins’s register. Alston asked for cigarettes, and Thompkins walked toward the customer-service counter to get them. As she returned from the customer-service counter, she saw two masked black men carrying guns entering the store.
Thompkins attempted to flee the store, but the two masked men grabbed her at gunpoint, asking for the manager. Meanwhile, Banks held a gun to Alston’s head. The store manager, Michael Bjorensen, who was on the ground by the self-checkout lanes, stood up, and the masked men took Thompkins and him at gunpoint to the store office. The men threatened the office manager, Denise Bourg, to open the office door or they would shoot Thompkins and Bjorensen.
Thereafter, the men forced Thompkins, Bjorensen, and Bourg, along with Alston, to lie on the ground. The men took cash from the store safe, and then brought another employee, Ronald Sutton, who had been working in the rear of the store, into the office. After the men left the store, the office manager telephoned emergency 911. The men took over $16,000 from the store during the robbery.
Detective David Marston of the City of Mobile Police Department investigated the robbery. Based upon the Winn Dixie reward account used by Banks on the evening of the robbery, Detective Marston searched for Banks as a potential suspect. *388 Several days after the robbery, on January 30, 2008, officers detained Banks when they came upon his vehicle, a white Cadillac, broken down and in the middle of a road. After waiving his Miranda[1] rights, Banks told Detective Marston that he had never been inside the Winn-Dixie grocery store. He later admitted that he was at the store on the evening of January 28, 2008, “but did not see anything.” (R. 337.) During the interview, Banks wore the “praying hands” earrings that Thompkins had noticed on the evening of the robbery.
Detective Marston obtained a search warrant for Banks’s vehicle. The search resulted in the seizure of two photographs of Banks, a black jacket, and pants, where a money wrapper marked with the address and number of the Winn-Dixie grocery store where the robbery took place was found inside one of the pockets. The officers found no money or guns in the vehicle.
Sheri Banks, Banks’s mother, testified that a few days before his arrest, Banks telephoned her and told her that a man had pulled a gun on him. She instructed him to call the police. After receiving the telephone call from her son, she went to her sister’s house and telephoned the police. When the police arrived at Sheri Banks’s sister’s house, the officer prepared an incident report. She testified that Banks also reported the incident to the police.
I.
Banks first argues that the trial court erred in prohibiting him from introducing into evidence an incident report for menacing he filed after the robbery; the evidence, he said, related to the issue of flight. Banks moved to admit the incident report, which he argued showed that someone had threatened him with a gun on January 28, 2008, several days after the January 23, 2008, robbery at the Winn Dixie store, but before he was arrested on January 30, 2008, because he claimed that it was admissible to rebut the State’s evidence that he was eluding the police following the robbery at the Winn Dixie grocery store. We conclude that the trial court did not exceed its discretion in refusing to admit the January 28, 2008, incident report.
“ ‘ “The admission or exclusion of evidence is a matter within the sound discretion of the trial court.” Taylor v. State, 808 So.2d 1148, 1191 (Ala.Crim.App.2000), aff'd, 808 So.2d 1215 (Ala.2001). “The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.” Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000). In addition, “[tjrial courts are vested with considerable discretion in determining whether evidence is relevant, and such a determination will not be reversed absent plain error or an abuse of discretion.” Hayes v. State, 717 So.2d 30, 36 (Ala.Crim.App.1997).’
“Gavin v. State, 891 So.2d 907, 963 (Ala.Crim.App.2003).”
Woods v. State, 13 So.3d 1, 23 (Ala.Crim.App.2007).
Rule 401, Ala.R.Evid., defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Although relevant evidence is admissible, Rule 402, Ala.R.Evid., it “may be excluded *389 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” Rule 403, Ala. R.Evid.
Banks’s mother testified that on January 28, 2008, five days after the robbery at the Winn-Dixie grocery store, she initiated the filing of an incident report because her son told her that someone had pulled a gun on him and threatened to shoot him. Sheri Banks further testified that her son, Banks, gave his rendition of the events for the report. After Sheri Banks testified and was cross-examined, Banks moved to admit the incident report into evidence. Defense counsel argued that the incident report was relevant to negate that Banks was on the run after the Winn-Dixie robbery. Defense counsel also argued that the incident report showed that law-enforcement officers had spoken to Banks prior to his arrest for the Winn-Dixie robbery. Before Sheri Banks testified, the State argued that the incident report was not relevant. The trial court found that the incident report was inadmissible and only bolstered Sheri Banks’s testimony. (R. 381, 384.)
In this case, the incident report was cumulative of Sheri Banks’s testimony. See Smith v. State, 745 So.2d 922, 936 (Ala.Crim.App.1999) (stating that the exclusion of admissible evidence does not constitute reversible error when the evidence would have been merely cumulative of other evidence of the same nature that was admitted). Further, the exclusion of the incident report was harmless in that it did not affect the outcome of the trial or Banks’s substantial rights. See Ex parte Lowe, 514 So.2d 1049, 1050 (Ala.1987) (“The proper inquiry here is not whether evidence of the defendant’s guilt is overwhelming but, instead, whether a substantial right of the defendant has or probably has been adversely affected.”). Therefore, the trial court did not err in not admitting the incident report.
II.
Banks next argues that the trial court erred by refusing to give his requested jury charges concerning eyewitness-identification testimony. Specifically, Banks contends that the trial court erred in refusing to give proposed jury charges 6 and 7. (C. 33-34; R. 360-61.)
Banks’s requested jury charge no. 6 provided:
“The reliability of eyewitness identification has been raised as an issue in this case and deserves your attention. Identification testimony is an expression of belief or impression by the witness. Its value depends upon the opportunity the witness had to observe the offender at the time of the offense and later to make a reliable identification, and upon the influences and circumstances under which the witness made the identification.
“You must consider the credibility of each identification witness in the same way as any other witness. Consider whether she is truthful, and consider whether she had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.
“The State has the burden of proving beyond a reasonable doubt that the defendant was the person who committed the crime.”
(C. 33.) Banks’s requested jury charge no. 7 provided as follows:
“I charge you, members of the jury, that identification testimony by an eyewitness is in the nature of opinion testimony, and the jury should view and *390 weigh such testimony as it would any expression of opinion by a witness.”
(C. 34.)
The following exchange occurred regarding proposed instructions numbered 6 and 7:
“THE COURT: Number 6. I’m denying Number 6 because I’m — I give that, but I don’t talk about the reliability of witnesses, and identification is an expression of belief or opinion, and all of that. I’ve just never given anything like that, and I don’t intend to start now. It may be right, it may be wrong, but I’m going to deny that charge, Number 6.
“As with Number 7, stating that an eyewitness’s testimony is in the nature of opinion testimony. Well, most people’s testimony is their opinion. I mean, so, I don’t know what that meant. So I’m denying it. That’s 6 and 7.”
(R. 360.)
“[DEFENSE COUNSEL]: Yes, sir. As to 6 and 7, the eyewitness, I think they are correct statements of the law, and especially in light of the Prosecution saying in her voir dire that eyewitness testimony is just as credible as DNA and fingerprints, et cetera. And I think that was a misrepresentation of what eyewitness testimony is. But it still can be tested as to its credibility. So I think that in lieu of those voir dire statements, that those would be apropos in this case to be given, and gravaman to the defense that it’s not so much just this is the guy that did it, but as to what they claim they saw, et cetera. That’s their opinion, and it can still be attacked as to their credibility. They may have a belief in it. So I think they cover that aspect of it. I don’t think it will be adequately covered in your oral charge.”
(R. 361.)
We first question whether Banks adequately preserved this issue for review. Banks argued at trial, and he argues on appeal, that the refused instructions were correct statements of the law and that they would not be adequately covered in the oral charge. On appeal, Banks cites no authority for the proposition except authority stating only general propositions of law. Rule 28(a)(10), Ala.R.App.P., requires that an argument in an appellate brief contain “the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.” Banks has failed to satisfy Rule 28(a)(10). See Spradlin v. Spradlin, 601 So.2d 76, 78-79 (Ala.1992) (holding that citation to a single case with no argument as to how that case supports the appellant’s contention on appeal was insufficient to satisfy Rule 28(a)(5) (now Rule 28(a)(10)), Ala.R.App.P.).
However, even if it were properly before this Court, Banks’s argument is without merit. The record indicates that the trial judge did give a lengthy charge concerning the credibility of the witnesses. The court gave the following instruction:
“[THE COURT]: In deciding whether or not you believe any witness, I suggest you ask yourself a few questions. Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness have an opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness’s testimony differ from other testimony or other evidence?
“The credibility of a witness may be impeached or attacked by introducing *391 evidence that the witness made a statement on an earlier occasion which is inconsistent with the witness’ trial testimony.
“If you believe from the evidence that a witness has made a statement on an earlier occasion which is inconsistent with the witness’ trial testimony, such evidence may go to the credibility of that witness, and you may consider it along with all of the other evidence in determining what weight you will give that witness’ testimony.
“I will tell you that a fact may be established as firmly by the testimony of one witness as that of the testimony of the entire community.
“I charge you that the testimony of law enforcement officers is to be subjected to the same test and given the same consideration of weight as that of any other witness. No more or no less weight can be given their testimony simply because of their official capacity.
“Everyone, law enforcement officers and others, are judged and treated the same way.
“I also charge you that the weight of the evidence is not necessarily determined by the number of witnesses who testified.”
(R. 392-95.) The trial court adequately covered the relevant legal issues of the case and did not err in refusing to give the requested instructions. See Ex parte Jones, 450 So.2d 171 (Ala.1984) (trial court properly refused defendant’s requested charges on identification where witness identified defendant); Miller v. State, 687 So.2d 1281, 1285 (Ala.Crim.App.1996) (trial court thoroughly charged the jury on the credibility of the witnesses and the manner in which the jury was to treat the identification testimony); Jennings v. State, 513 So.2d 91, 94-95 (Ala.Crim.App.1987) (trial court adequately covered the issue of identification, and its refusal of the defendant’s requested charge on the same point of law was not error); Henderson v. State, 373 So.2d 1218 (Ala.Crim.App.), cert. denied, Ex parte Henderson, 373 So.2d 1221 (Ala.1979) (trial court properly refused requested identification evidence instructions where requested charges were misleading and abstract because there was no evidence indicating that victim’s identification was tainted by fact that police had shown victim pictures of defendant before trial); Rowser v. State, 346 So.2d 533, 535-536 (Ala.Crim.App.), cert. denied, Ex Parte Rowser, 346 So.2d 536 (Ala.1977) (where a witness is positive in identifying the defendant there is no good reason for giving a charge on the human error or mistake that may occur in the identification process). Therefore, even if the issue were properly before this Court, we would find no error in the trial court’s refusal to give the requested jury charges.
III.
Lastly, Banks argues that the trial court committed reversible error in sentencing him without a sentencing hearing, without an allocution, and without a pre-sentence investigation and report. We must first determine whether this claim is properly before this court.
In Ex parte Seymour, 946 So.2d 536, 538 (Ala.2006), a collateral-review case, the Alabama Supreme Court, in holding that a defect in the criminal indictment is a non-jurisdictional error that may be waived, discussed extensively the concept of a trial court’s subject-matter jurisdiction. Additionally, this Court has held that on collateral-review, “the failure of the trial court to advise a defendant of his or her right to appeal a guilty-plea conviction and to have counsel appointed on appeal if he or she is indigent is not a defect that impacts the jurisdiction of the trial court.” Robey v. *392 State, 950 So.2d 1235, 1237 (Ala.Crim.App.2006). In Shaw v. State, 949 So.2d 184 (Ala.Crim.App.2006), this Court held that, on collateral review, “[a] claim that a defendant was not afforded the opportunity to address the court before the sentence is imposed is not a jurisdictional claim.” 949 So.2d at 187.
Although we have consistently held in collateral-review proceedings that an al-locution, the right to appeal a guilty-plea conviction, and the right to have counsel appointed on appeal are nonjurisdictional errors that may be waived, we conclude that the requirement that a sentencing hearing be held and the requirement that the defendant be afforded the opportunity to speak on his or her behalf at the sentencing hearing are exceptions to the general preservation rule and are required to afford a defendant the minimal due process. Rule 26.6(b), Ala.R.Crim.P, provides that a sentencing hearing is required in all cases in which the judge has “discretionary” sentencing authority, unless a hearing is waived by the parties with the consent of the court. Further, the Committee Comments following the rule state that “after conviction, a judge holds a hearing for the purpose of receiving evidence bearing on the issues of the length and terms of the sentence to impose and whether to grant probation, unless the statute gives no discretion as to either term of sentence or probation.” Rule 26.6, Ala.R.Crim.P., Committee Comments.
Robbery in the first degree, when a firearm or deadly weapon was used in the commission of the robbery, is a Class A felony punishable by life imprisonment or by imprisonment for not more than 99 years or less than 20 years. See § 13A-8-41, Ala.Code 1975; § 13A-5-6(a)(l), Ala. Code 1975; and § 13A-5-6(4), Ala.Code 1975. Here, the trial court could have sentenced Banks to a term as short as 20 years or as long as 99 years or life. Because the trial court had discretion in determining Banks’s sentence, a sentencing hearing was required, unless such a hearing was waived by the parties with the trial court’s consent. Rule 26.6(b)(1), Ala. R.Crim. P.; Cf. Holley v. State, 651 So.2d 50 (Ala.Crim.App.1994) (trial court’s error in sentencing defendant without a sentence hearing was harmless because the minimum sentence was imposed).
The record discloses that immediately after the jury returned a guilty verdict on the charge of first-degree robbery, the trial judge adjudged Banks guilty and sentenced him to life imprisonment. Thereafter, the trial judge remanded Banks to the custody of the sheriff. Banks’s trial counsel gave oral notice of appeal and then moved to withdraw as Banks’s counsel. The trial court instructed Banks’s trial counsel to file a written notice of appeal and appointed another attorney to represent Banks on appeal. (R. 415-16.) Further, the trial judge entered notations on the case-action summary adjudging Banks guilty, ordering him to pay $50 to the crime victims compensation fund, giving him credit for time spent in jail, noting the oral notice of appeal, and appointing appellate counsel for Banks. (C. 4.)
Although the trial court purported to commence a sentencing “hearing” immediately after a determination of guilt, the court merely announced Banks’s sentence without allowing Banks the opportunity to be heard. The record does not indicate that Banks waived a sentencing hearing. See Day v. State, 539 So.2d 410, 415 (Ala.Crim.App.1988) (mere acquiescence does not constitute a waiver of a sentence hearing). “ ‘A hearing ordinarily is defined, in matters not associated with full trials, as a proceeding in which the parties are afforded an opportunity to adduce proof and to argue (in person or by *393 counsel) as to the inferences flowing from the evidence.’ Fiorella v. State, 40 Ala.App. 587, 590, 121 So.2d 875, 878 (I960).” Ex parte Anderson, 999 So.2d 575, 578 (Ala.2008).
Additionally, regarding the requirement of an allocution, Ex parte Anderson, 434 So.2d 737 (Ala.1983), and the cases following it hold that when the lack of an allocution or the waiver of allocution is raised on direct appeal remand is required because a sentence without an allocution is erroneous. See Davis v. State, 747 So.2d 921, 925 (Ala.Crim.App.1999); Newton v. State, 673 So.2d 799, 800-01 (Ala.Crim.App.1995); Burks v. State, 600 So.2d 374, 382-83 (Ala.Crim.App.1991); Duncan v. State, 587 So.2d 1260, 1264 (Ala.Crim.App.1991); Cline v. State, 571 So.2d 368, 372 (Ala.Crim.App.1990); Maul v. State, 531 So.2d 35, 36 (Ala.Crim.App.1988). See also Ebens v. State, 518 So.2d 1264, 1269 (Ala.Crim.App.1986); Oliver v. State, 25 Ala.App. 34, 34, 140 So. 180, 181 (1932) (wherein the court noted that “to constitute a valid judgment[, the fact that the defendant was asked if he had anything to say why the sentence of law should not be pronounced upon him] must appear in the minute entry of the judgment”). We note that in Shaw v. State, supra, this Court recognized and reiterated that on direct appeal, when the issue of the lack of an allocution or a waiver of an allocution is raised, the case is to be remanded. 949 So.2d at 187. Rule 26.9(b)(1) also provides that in pronouncing the sentence, the trial judge must “[a]fford the defendant an opportunity to make a statement in his or her own behalf before imposing sentence.” The Committee Comments following Rule 26 state that a defendant is entitled to allocution, regardless of the gravity of the sentence imposed. See Rule 26.9, Ala. R.Crim.P., Committee Comments. However, this Court has consistently held in appeals from the denial of a Rule 32, Ala. R.Crim. P., petition that “[a] claim that a defendant was not afforded the opportunity to address the court before the sentence is imposed is not a jurisdictional claim.” Shaw v. State, 949 So.2d at 187. See Holloway v. State, 971 So.2d 729 (Ala.Crim.App.2006); Robey v. State, 950 So.2d 1235 (Ala.Crim.App.2006). See also Davis v. State, 720 So.2d 1006, 1024-25 (Ala.Crim.App.1998). As Justice Stuart stated in her dissent in Ex parte Robey, 953 So.2d 363, 365 (Ala.2006),
“The law in Alabama regarding a trial court’s personal and subject-matter jurisdiction over a criminal defendant is convoluted, and the definition of subject-matter jurisdiction, i.e., a trial court’s authority to render judgment and to impose sentence, is tortured with inaccuracy and confusion.”
953 So.2d at 365-66. Recent Alabama Supreme Court opinions such as Seymour and Robey have done much to clarify the understanding and to rein in the use of the term “jurisdictional.” We invite the Alabama Supreme Court to take the next opportunity to also provide guidance as to the question whether certain “due process” rights or mandatory stages of trial proceedings constitute “jurisdictional” matters and to determine which is bad law: the line of cases in collateral proceedings holding that the lack of an allocution is a nonjurisdictional defect subject to the procedural bars of Rule 32, Ala.R.Crim.P., or the line of direct-appeal cases addressing unpreserved challenges to the lack of allo-cution, holding that these challenges are not jurisdictional but instead are exceptions to the preservation requirements this Court is ordinarily subject to, thus providing a definitive answer to the questions raised by the conflicting caselaw.
With all the above-discussed principles of law in mind, we conclude that because the record shows no sentencing hearing or *394 any waiver of a sentencing hearing, and shows no allocution or a waiver of an allo-cution, we are compelled to reverse the sentence and remand this cause to the trial court for that court to resentence Banks. On remand the trial judge shall conduct a proper sentencing hearing in which a pre-sentence investigation is conducted and a proper allocution is provided. The trial court is directed to make a return to this Court showing compliance with these instructions within 49 days from the date of this opinion. The return to remand shall include a transcript of the sentencing hearing and a copy of the presentence investigation or other documents, if any, relied upon by the trial court in imposing sentence.
For the above-mentioned reasons, Banks’s conviction for first-degree robbery is due to be affirmed, his sentence is reversed, and the case remanded for resen-tencing.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED WITH INSTRUCTIONS. 
WELCH and KELLUM, JJ„ concur. WISE, P.J., and WINDOM, J., concur in the result.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)